(No. 15698.—Reversed in part and remanded.)
THE CITY OF EDWARDSVILLE, Appellee, *vs.* THE ILLINOIS
BELL TELEPHONE COMPANY, Appellant.

*Opinion filed December 19, 1923—Rehearing denied Feb. 7, 1924.*

1. PUBLIC UTILITIES—*State has no power to fix rates which are confiscatory.* The legislature has power, through its agency the Commerce Commission, to fix rates for the service of public utilities; but this power does not include the right to fix rates which are confiscatory, and it is a question for the courts whether the rates fixed are such as deprive the public utility of its property without due process of law.

2. SAME—*when allegations of the answer must be taken as true.* Where exceptions are sustained to the answer of a public utility in a proceeding to enjoin it from charging and collecting advanced rates, it must be assumed in the Supreme Court that the defendant could have proved the allegations of the answer (which were stricken) that the company suffered a daily loss under its old rates.

3. SAME—*when public utility may collect advanced rates until reasonable rates are determined by commission.* Where the Commerce Commission has from time to time suspended the taking effect of advanced rates scheduled by a public utility and finally enters an order permanently suspending said schedule without determining what rates are reasonable, the order for permanent suspension, or for any suspension beyond the period allowed by statute, is void, and at the expiration of said period the rates scheduled by the public utility will go into effect, subject to the power of the Commerce Commission subsequently to alter or change them.

APPEAL from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

CUTTING, MOORE & SIDLEY, (WILLIAM D. BANGS, and PHILIP BARTON WARREN, of counsel,) for appellant.

J. F. EECK, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the Illinois Bell Telephone Company from a decree of the circuit court of Madison county perpetually enjoining it from collecting in the city of Edwardsville the advanced rates stated in rate schedule I. P. U. C. 1,

or collecting a higher rate than was charged by it in the city prior to August 1, 1921, or from disconnecting telephones and discontinuing or interfering with telephone service in the city by reason of telephone subscribers refusing to pay higher rates than were charged prior to August 1, 1921, all unless and until the consent and approval of the Illinois Commerce Commission was procured for the charging and collecting of such higher rates. The record presented the issue whether or not the rates prior to August 1, 1921, were confiscatory, and on account of the constitutional question thus raised the appeal was taken to that court.

The appellant is an Illinois corporation which owns and operates a telephone exchange in the city of Edwardsville. On January 1, 1914, the Central Union Telephone Company, which was then the owner of the exchange, filed its schedule of rates for local exchange service in the city and vicinity with the Public Utilities Commission, designated I. P. U. C. Original, which continued in effect until August 1, 1921. On September 1, 1920, the company filed its schedule of increased rates designated I. P. U. C. 1, to become effective October 1, 1920. On September 20, 1920, for the purpose of investigating the reasonableness and propriety of the latter rate schedule, the Public Utilities Commission suspended its effective date until January 30, 1921, and on February 1, 1921, entered another order suspending the effective date until July 30, 1921, and on July 19 entered another order suspending the effective date until January 27, 1922. In the meantime the appellant, which had acquired the property from the Central Union Telephone Company, was substituted for the latter company in the proceedings, and hearings were had from time to time, which resulted on October 31, 1921, in an order by the commission permanently suspending, canceling and annulling schedule I. P. U. C. 1 without finding the rates unjust and unreasonable and without finding or fixing any other rates

as just and reasonable. The appellant filed a petition for rehearing, which was denied, and the appellant thereupon prosecuted an appeal to the circuit court of Sangamon county and afterward to the Supreme Court, which on October 21, 1922, adjudged the order of the commission to be null and void, reversed the judgment of the circuit court and remanded the cause to that court, with directions to remand it to the commission to determine whether or not the proposed schedule of rates is just and reasonable, and if it finds it is not, to find what are reasonable rates and to fix the same. On August 1, 1921, the appellant put into effect its schedule I. P. U. C. 1 without the consent of the commission and without a finding of the commission that the increase was justified, began to charge and collect the increased rates fixed in that schedule, and continued to do so until December 3, 1921, when, without notice and without bond, it was restrained by the injunction in this case from collecting such rates. The city of Edwardsville filed its bill on December 2, setting out the facts which have been stated, praying for an injunction against charging and collecting the increased rates, and a preliminary injunction was issued. The appellant filed an answer on February 27, 1923, showing that on account of the greatly increased cost of labor and material resulting from the war the revenue derived from the original schedule of rates was on January 1, 1919, and had ever since continued to be, insufficient to pay the cost of operating the exchange; that such cost exceeded the revenue derived from such schedule of rates during the years 1919, 1920, 1921 and the first nine months of the year 1922, as shown by an exhibit attached to the bill setting out the revenue and the operating expenses for each of those years. The exhibit showed a deficit for those years, respectively, of $7253.82, $11,583.63, $12,649.24, and for the first nine months of 1922 of $10,-472.23. The answer set out the proceedings before the commission and in the courts which have been referred to, and

stated that so long as the injunction was continued in force it would continue to suffer great and irreparable loss and its property would be taken without due process of law, in violation of its constitutional rights. The complainant excepted to all the allegations of the answer concerning revenue and operating expenses and concerning the loss to the appellant in operating under the old schedule, and the court sustained the exceptions. The appellant also filed a cross-bill setting out substantially the same facts as in the answer, and praying for an injunction against the city of Edwardsville attempting to compel it to collect only the rates prescribed in the rate schedule I. P. U. C. Original. A demurrer to the cross-bill was sustained, there was a hearing on the original bill, pleadings and stipulation of facts, and a decree making the injunction on the original bill perpetual and dismissing the cross-bill.

The State has no power to compel a corporation engaged in operating a public utility to serve the public without a reasonable compensation. The power of the legislature over rates to be charged is not absolute but is limited. It is the power to regulate and not to confiscate. It is a legislative power to fix rates, but it is a judicial question whether the rates fixed are such as to deprive the public utility affected of its property without due process of law. The owners of property invested in public utility corporations are entitled to the equal protection of the law which is guaranteed to all, and they are deprived of it and of their property if the rates fixed by law are so low as to prevent the companies from earning any compensation for the use of the property after keeping it in repair and paying the expenses of operation. *Reagan* v. *Farmers' Loan and Trust Co.* 154 U. S. 362; *St. Louis and San Francisco Railway Co.* v. *Gill,* 156 id. 649; *Covington and Lexington Township Turnpike Road Co.* v. *Sandford,* 164 id. 578; *Smyth* v. *Ames,* 169 id. 466; *Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555; *Public Utilities Com.* v. *Spring-*

*field Gas and Electric Co.* 291 id. 209; *Mt. Carmel Utility Co.* v. *Public Utilities Com.* 297 id. 303.

On the hearing the appellant offered to prove the allegations of its answer to which exceptions had been sustained, but the offer was, of course, refused, since all the allegations were stricken out. It must be assumed on this hearing that the appellant could have proved the allegations, and it is manifest, therefore, that it is suffering a daily loss from the confiscatory rate under which by the injunction it is compelled to transact its business. On September 1, 1920, it filed a new schedule of rates in accordance with section 36 of the Public Utilities act. This schedule was to go into effect on October 1, 1920, unless suspended, as it might be, by the Public Utilities Commission for not more than one hundred and twenty days beyond that time, unless the commission, in its discretion, should extend the period of suspension for a further period not exceeding six months. The Public Utilities Commission undertook to suspend the schedule for a longer time, and finally permanently suspended it without making any finding that the rates were unjust and unreasonable or what were just and reasonable rates, but these orders were void. (*Illinois Bell Telephone Co.* v. *Commerce Com.* 304 Ill. 357.) Therefore, on August 1, 1921, the schedule I. P. U. C. 1 was no longer suspended but the appellant had a right to put it in force. The Commerce Commission might still proceed with its investigation and inquiry and pass upon the schedule and find what were just and reasonable rates, and the appellant would be bound to observe those rates, but until such finding and determination it was legally entitled to put in force the rates fixed by schedule I. P. U. C. 1.

Section 36 of the Public Utilities act provides that all rates or charges not suspended by the commission shall, on the expiration of thirty days from the date of filing, or such lesser time as the commission may grant, go into effect and be the established and effective rates or charges, subject to

the power of the commission, after a hearing had upon its own motion or upon complaint, to alter or modify the same. The right of the public utility to fix its rates, subject to the power of the commission to suspend or alter them, is recognized. The power of the commission to suspend is limited to one hundred and twenty days beyond the time when the rate or charge would otherwise go into effect, unless the commission, in its discretion, extends the period of suspension for a further period not exceeding six months. That time having expired the rates are legally in effect, subject to the power of the commission to alter or change them. The commission may still establish just and reasonable rates, but until that is done the company may charge the rates named in the schedule.

Since the schedule I. P. U. C. 1 is now the lawful schedule of rates in the city of Edwardsville, the decree enjoining the appellant from charging and collecting such rates was erroneous. If the Commerce Commission shall hereafter alter the rates this action may affect the rights of the parties, but so long as the rates charged by the appellant are those of a lawful schedule the appellee has no right of action in equity.

The demurrer to the cross-bill was properly sustained. Its prayer was that the appellee be restrained from any attempt to compel the complainant to continue in force the rates prescribed by rate schedule I. P. U. C. Original. The only attempts the appellee was making were through the tribunals established by law to require the appellant to comply with what the appellee regarded as the appellant's obligations to the public, including the appellee. No reason was shown why the appellee had not the right to appeal to the Commerce Commission or the courts to enforce such rights as it believed it lawfully possessed.

The decree dismissing the cross-bill will be affirmed and the decree on the original bill will be reversed and the cause will be remanded, with directions to dismiss the original bill.

*Reversed in part and remanded, with directions.*