574 P.2d 902

**GRINDSTONE BUTTE MUTUAL CA-
NAL COMPANY and Farm Develop-
ment Corporation, Appellants,**

v.

**IDAHO POWER COMPANY, and Idaho
Public Utilities Commission,
Respondents.**

Nos. 11860, 12023.

Supreme Court of Idaho.

Jan. 26, 1978.

 

William F. Ringert, of Anderson, Kaufman, Anderson & Ringert, Boise, for appellants.

Wayne L. Kidwell, Atty. Gen., and Robert L. Jones, Asst. Atty. Gen., State of Idaho, for respondent Idaho Public Utilities Commission.

William R. Fleming, Boise, and Thomas G. Nelson, of Parry, Robertson, Daly & Larson, Twin Falls, for respondent Idaho Power Co.

McFADDEN, Justice.

Respondent Idaho Power Company is a public utility supplying electrical power to various portions of southern Idaho. Appellants Grindstone Butte Mutual Canal Company and Farm Development Corporation are Idaho Power customers who purchase electricity to power irrigation pumping facilities. Appellants seek review of an Idaho Public Utilities Commission order granting electrical rate increases to Idaho Power and allocating the spread of that increase. We set aside the orders of the Idaho Public Utilities Commission in Case No. 11860. The orders in Case No. 12023 are affirmed.

Idaho Power filed an application with the Public Utilities Commission seeking an increase in electrical rates. The Commission conducted hearings in 1974, and on October 4, 1974 issued Order No. 11636. That order concluded that Idaho Power would experience revenue deficiencies and authorized it to revise its rates, charges and special contracts to increase revenues in the amount of $6,840,000. It also directed the company to submit new rate schedules sufficiently increased to meet the deficiency. The order also provided that the allocation of the increase among various classes of users would be subject to further proceedings.

At subsequent hearings, Idaho Power submitted a revised schedule of rates and tariffs reflecting uniform rate increases of 9.65% for all customers. The Commission staff then presented evidence showing possible rate structures which would include no increase for various classes of low quantity residential users.

On November 27, 1974, the Commission entered Order No. 11694 (the subject of appeal No. 11860), which denied the schedule submitted by Idaho Power, and ordered the company to submit revised schedules reflecting no increase for the first 400 kilowatt hours of monthly use for residential users, and providing a 16% increase for Schedule 24, Irrigation and/or Soil Drainage Pumping Service. The order provided that the new schedules when approved would become effective on one day's notice. Finding No. V of that order indicated that as there was some question as to the reasonableness of existing rate structures, the order was to be considered an interim order and the hearings would be kept open pending a final decision. At that point, Grindstone Butte and Farm Development Corporation, as intervenors in the Commission proceedings, filed a petition for rehearing, particularly challenging the 16% increase for Schedule 24 service. That petition was denied by Order No. 11738, dated January 10, 1975, and the appellants perfected an appeal, Supreme Court No. 11860.

Approximately three months later, the Commission held further hearings on the rate structure. At a prehearing conference the Commission advised intervenors that the burden would be upon them to establish that the rate structure created in Order No. 11694 was unreasonable, improper or unjust. At the hearing, appellants submitted evidence showing the economic climate in the agricultural community, and documenting the potential impact of rate increases in the cost of electrical power on irrigation pumping. The Commission staff submitted Exhibit 75, which showed that rates paid by irrigation pumpers were yielding a substantially lower rate of return than other users.

On June 13, 1975, the Commission entered Order No. 11949, adopting the interim rate schedule as final. After filing a petition for rehearing, which was denied (Order No. 12013, dated July 28, 1975), the intervenors perfected a second appeal, Supreme Court No. 12023.

The two appeals have been consolidated. Appellants assign as error several procedures employed by the Commission; they charge that the Commission lost jurisdiction to further consider the matter after eleven months, that the Commission lacks authority to enter an interim schedule, and that the Commission failed to give adequate notice that it intended to consider special rate increases for irrigation pumpers. Appellants also charge as error that the Commission lacked a basis in evidence for allocating proportionately higher rate schedules for irrigation pumpers.

## I

Appellants first argue that the authority of the Public Utilities Commission to act on a rate case is limited by the provisions of I.C. § 61–623.[1] The interpretation of that statute urged by appellants is that after a

---

1. "61–623. Determination of schedule and regular rates.—Whenever there shall be filed with the Commission any schedule stating an individual or joint rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation increasing or resulting in the increase of any rate, fare, toll, rental, or charge, the commission shall have power, and is hereby given authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleadings by the interested public utility or utilities, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation, and pending the hearing and decision thereon, such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not go into effect: provided, that the period of suspension of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not extend beyond 120 days beyond the time when such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation would otherwise go into effect unless the commission in its discretion, extends the period of suspension for a further period not exceeding six (6) months: provided further, that prior to the expiration of said periods of suspension the commission may, with the consent in writing signed by the party filing such schedule, permanently or further suspend the same. On such hearing the commission shall establish the rates, fares, tolls, rentals, charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part or others in lieu thereof, which it shall find to be just and reasonable. All such rates, fares, tolls, rentals, charges, classifications, contracts, practices, rules or regulations,

maximum of eleven months, the Commission must order permanent rates and that further inquiry and changes in rates are thereafter barred. In the instant case, Idaho Power's application for rate increase was filed on December 17, 1973. Appellant contends that as of November 17, 1974, the authority of the Commission to alter those rates ceased. At the time of the alleged cessation of authority, Order No. 11636 was in effect, granting a $6,840,949 increase in revenue, and Idaho Power had filed a schedule reflecting an across the board increase to provide that amount. Thus, appellants contend that the uniform increase as originally sought by Idaho Power should be considered the final order.

This court considered I.C. § 61–623, then I.C.A. § 59–623, in *Mountain View Rural Telephone Co. v. Interstate Telephone Co.,* 55 Idaho 514, 46 P.2d 723 (1935). There, this court noted that the word "not" should be read into the section preceding the phrase "increasing or resulting in an in-

crease." The effect of this interpretation is to make I.C. § 61–623 applicable to the setting of *new* rates, but not increased rates. The interpretation was necessitated by an apparent conflict with I.C. § 61–622, then I.C.A. § 59–622, which purported to deal with increases in existing rates. The result is that I.C. § 61–623 applies to setting of new rates, while I.C. § 61–622 governs increases in rates previously set by the Commission.

In the instant case, the Commission is being asked to raise rates which it previously set, and the applicable statute is I.C. § 61–622. This matter was originally filed with the Commission on December 17, 1973. At that time, I.C. § 61–622 contained no time limit of any sort.[2] It cannot be said that the jurisdiction of the IPUC was limited to any statutorily specified time period.

We note additionally that I.C. § 61–502 gives the Commission on-going power and duty to fix reasonable rates:

not so suspended shall, on the expiration of thirty (30) days from the time of filing the same with the commission, or of such lesser time as the commission may grant, go into effect and be established and effective rates, fares, tolls, rentals, charges, classifications, contracts, practices, rules and regulations, subject to the power of the commission after a hearing had on its own motion or upon complaint, as herein provided to alter or modify the same."

2. As of December 17, 1973, I.C. § 61–622 provided:
"61–622. Finding of commission necessary for increase in rate.—No public utility shall raise any rate, fare, toll, rental or charge or so alter any classification, contract, practice, rule or regulation as to result in an increase in any rate, fare, toll, rental or charge, under any circumstances whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justified."
Not until 1975 was the section amended to include any sort of time limitation. The 1975 amendment (effective March 21, 1975) provided:
"61–622. Finding of commission necessary for increase in rate.—No public utility shall raise any rate, fare, toll, rental or charge or so alter any classification, contract, practice, rule or regulation as to result in an increase in any rate, fare, toll, rental or charge, under any circumstances whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justi-

fied. The commission shall have power, and is hereby given authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleadings by the interested public utility or utilities, but upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation, and pending the hearing and decision thereon, such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not go into effect; provided, that the period of suspension of such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation shall not extend beyond thirty (30) days when such rate, fare, toll, rental, charge, classification, contract, practice, rule or regulation would otherwise go into effect, unless the commission in its discretion extends the period of suspension for a further period not exceeding five (5) months; provided further, that prior to the expiration of said periods of suspension the commission may, with the consent in writing signed by the party filing such schedule, permanently or further suspend the same. On such hearing, the commission shall establish the rates, fares, tolls, rentals, charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable."
The section was then again amended in 1976.

"61–502. Determination of rates.— Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates, fares, tolls, rentals, charges or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursions or commutation tickets, or that the rules, regulations, practices, or contracts or any of them, affecting such rates, fares, tolls, rentals, charges or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices or contracts to be thereafter observed and in force and shall fix the same by order as hereinafter provided, and shall, under such rules and regulations as the commission may prescribe, fix the reasonable maximum rates to be charged for water by any public utility coming within the provisions of this act relating to the sale of water."

The Illinois Supreme Court, in dealing with similar statutes, noted that

"The contention that the Commission must conclude its inquiry into the proposed rate within a ten-month period confuses the power of the Commission to suspend with its power to determine the reasonableness of the rate. The ten-month period applies only to the former. If that period has expired before the Commission has concluded its inquiry, then the utility may begin collecting charges under the new rate, so far as pre-existing contractual obligations permit. The running of the period does not terminate the Commission's inquiry, however, and the new rate remains subject to permanent cancellation by the Commission's final order in the proceedings. *Illinois Bell Telephone Co. v. Commerce Comm. ex rel. City of Edwardsville*, 304 Ill. 357, 136 N.E. 676; *City of Edwardsville v. Illinois Bell Telephone Co.*, 310 Ill. 618, 142 N.E. 197." *Central Ill. Public Service Co. v. Ill. Commerce Comm'n*, 5 Ill.2d 195, 125 N.E.2d 269, 274–75 (1955). See also, *Application of Montana-Dakota Utilities Co.*, 102 N.W.2d 329 (N.D.1960).

■ The Commission was not only empowered, but charged with a continuing obligation, to continue its inquiry into the rate structure. I.C. § 61–502. The Commission did not err in entering orders subsequent to the expiration of the eleven month period, because no statute limits the time of its jurisdiction and because the Commission is authorized on an on-going basis to consider and alter rates.

■ Appellants similarly argue that the Commission lacks authority to enter interim orders. All Commission orders as to rates are subject to change, given the mandate of I.C. § 61–502 that the Commission continue to evaluate the rates charged and make changes as necessary. It is true that no statute gives explicit authority to the Commission to enter "interim" or "temporary" orders; however, implied in the directive of on-going investigation is the power to make orders effecting rates that are temporary in nature. The procedure employed by the Commission was proper.

II

Appellants next contend that the Commission failed to give them adequate notice that a revision in the rate structure was being contemplated. Throughout the proceedings, it is apparent that a general rate increase was under consideration; however, it was not until the issuance of Commission Order No. 11694 on November 27, 1974, that appellants had an inkling that rate structures applicable to their business were due for special attention. Idaho Power was ordered to submit a revised schedule reflecting no increase in rates for residential service users in the first 400 KWH's of monthly use, and providing for 16 per cent increases in Schedule 24 rates, i. e., irrigation and/or soil drainage pumping service. The

order noted that "during the proceedings some questions were raised on the reasonableness of the form of the present rate schedules * * * therefore, the rates we approve in this proceeding are to be considered only interim rates pending further investigation by this Commission." The record was kept open for further investigation; however, the new rates were ordered effective upon one day's notice of Commission approval. New schedules were approved December 1, 1974.

Appellants do not argue that they were without notice of the proceedings for rate increase in general; rather, they argue that they were not apprised of a specific issue involved, that is, allocation of higher increases for irrigation pumpers, i. e. Schedule 24 rates. We agree that appellants were entitled to notification of that issue.

 Notice is rightfully considered to be a critical aspect of due process to be afforded in any administrative process.

"The essentials of due process permit administrative regulation only by adherence to the fundamental principles of constitutional government. The legislature must appropriately prescribe standards of administrative action. The quasi-judicial action thus prescribed, must faithfully observe the 'rudiments of fair play'. A fair and open hearing is the absolute demand of all judicial inquiry. In the field of administrative regulation it is not only vital to the validity of the regulation imposed; it is vital 'to the maintenance of public confidence in the value and soundness of this important governmental process'. *Morgan v. United States,* 304 U.S. 1, 14, 15, 58 S.Ct. 773, 775, 82 L.Ed. 1129; *Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U.S. 292, 304, 305, 57 S.Ct. 724, 81 L.Ed. 1093; *Sabre v. Rutland Railroad Co.,* 86 Vt. 347, 355, 369, 85 A. 693." *Petition of New England Telephone & Telegraph Co.,* 136 A.2d 357, 362 (Vt.1957).

Appurtenant to the right to notice is the right to be fairly notified as to the issues to be considered:

"However, by filing for a rate increase, Intermountain was not put upon notice that, nor could it have reasonably anticipated that the question of whether it could continue to conduct its retail gas appliance business was before the Commission. As the Court of Appeals in the District of Columbia Circuit said in the case of *American Public Gas Association v. Federal Power Commission,* 162 U.S. App.D.C. 176, 498 F.2d 718 (1974), in which the question of whether certain gas producers had been denied due process by the FPC's actions was presented,

'The procedure chosen by the Commission must of course give the parties fair notice of exactly what the Commission proposes to do, together with an opportunity to comment, to object, and to make written submissions; and the final order of the Commission must be based upon substantial evidence.' 498 F.2d at 722."

*Intermountain Gas Co. v. Idaho Pub. Utilities Comm'n,* 97 Idaho 113, 129, 540 P.2d 775, 791 (1975).

 We have examined the record carefully, and agree with the appellant that no notice of the issue of bringing irrigation pumpers up to a higher level of rate of return was given prior to the issuance of Order No. 11694. The Commission argues that rate allocation is inherent in any rate increase, and that appellants should have been prepared to defend their then-current levels. The Commission also argues that Exhibit 75, upon which the special increase of Order No. 11694 was based, had been present on the record and that the appellants should have discerned the significance of the exhibit. This sort of "notice" is inadequate. Nothing in the record gives fair indication of the Commission's consideration of special attention for irrigation pumpers. The appellants were entitled to fair and timely notice of the issue, and an opportunity to meet it, prior to the institution of the increased rates.

Appellants did receive notice of the allocation issue at the time of the issuance of Order No. 11694. Subsequent to that order,

and prior to the issuance of the Commission's final order in the case, appellants were afforded a full hearing held March 11, 1975. The final order, then, was entered with adequate notice.

The interim rates set forth in Order No. 11694 were submitted in schedule form by Idaho Power to the Commission and approved on December 1, 1974 (according to recitations in Order No. 11738). This was erroneous, as those rates went into effect prior to the time the appellants had received proper notice of the intention to increase the Schedule 24 rates to yield a higher level of rate of return. The final order, however, was not improper.

### III

In granting the rate increase to Idaho Power, the Commission ordered a 4.4 per cent increase for residential service (including no increase for the first 400 KWH's of monthly use), a 10.3 per cent increase for most other rate schedules, and a 16 per cent increase for Schedule 24 users, Irrigation and/or Soil Drainage Pumping service. The latter category includes appellants. From a reading of the Commission's order and finding, it appears that this allocation, including the particularly higher increase for irrigation pumpers, was based upon data contained in Exhibit 75, showing that irrigation pumpers produced a lower rate of return than other customers.[3] That exhibit shows that irrigation users yielded a 3.92

per cent rate of return for the Test Year 1974, compared to a total system rate of return of 7.24 per cent and a high of 13.09 per cent for street and area lighting users. This difference is the reason cited by the Commission for the irrigation pumpers' higher increase. (See n. 3)

The Commission is not required to create equality of rates among classes of the utility's customers if the rates set are reasonable. See, *Agricultural Products Corp. v. Utah Power and Light Co.,* 98 Idaho 23, 557 P.2d 617 (1976). Idaho Code § 61–315 provides:

> "No public utility shall, as to rates, charges, service, facilities or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates, charges, service, facilities or in any other respect, either as between localities or as between classes of service. The commission shall have the power to determine any question of fact arising under this section."

The foregoing statutory provision under chapter 3 of Title 61, Idaho Code, which chapter is entitled "Duties of Public Utilities," prohibits any public utility from maintaining "unreasonable differences" among various classes of service. Consistent with that section is I.C. § 61–502, found

---

3. Order No. 11694 notes that "The cost of service exhibit included in this record indicates that there are certain classes of customers who are at the present time producing a lower rate of return than the other classes of customers. These are the Irrigation and/or Soil Drainage Pumping rates, schedule 24 and Special Contracts. We are of the opinion that the Commission should bring these classes of customers closer to the average rate of return in view of the fact that the Applicant will in the future rely on thermal generation with its higher costs for its supply of power." The Commission then found in that Order:

> "That the cost of service exhibit shows that Irrigation and/or Drainage Pumping Service, Schedule 24, produces the lowest rate of return of any class of service; therefore, Schedule 24 should be increased 16 per cent."

In its final order, Order No. 11949, the Commission noted "the cost of service study clearly indicates that irrigation and/or drainage pumping service (Schedule 24) and special service contract service are producing lower rates of return than are other classes of service. By increasing Schedule 24 by 16 percent * * * we will not achieve parity among the various classes of service, but will make a reasonable and needed adjustment in that direction." The Commission then found in that Order:

> "THAT Exhibit 75 shows that irrigation and/or drainage pumping service (Schedule 24) produces the lowest rate of return of any class of service, and that the rate for service to this class should be increased 16 percent to achieve greater parity with other classes of service."

in Chapter 5, which is entitled "Powers and Duties of Commission." That section provides in pertinent part:

"Whenever the commission, after a hearing had * * * shall find that the rates, fares, tolls, rentals, charges or classifications, * * * demanded, observed, charged or collected by any public utility for any service or product or commodity * * * are unjust, unreasonable, discriminatory or preferential, or in any wise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications * * to be thereafter observed and in force and shall fix the same by order * *."

Under the provisions of this section the Commission is under the duty, if it finds after a hearing that any rate or classification is "unjust, unreasonable, discriminatory or preferential," to determine just and reasonable or sufficient rates or classifications.

The Commission is charged with the duty of making the determination as to whether rates or classifications are unjust, unreasonable, discriminatory or preferential. This determination is a factual one. In the instant case, the Commission found in Order No. 11694 (interim order of November 27, 1974):

"III

"THAT the cost of service exhibit shows that Irrigation and/or Drainage Pumping Service, Schedule 24, produces the lowest rate of return of any class of service; therefore, Schedule 24 should be increased 16 percent * * *."

Again in Order No. 11949, dated June 13, 1975, the Commission recalled the actions it ordered in Order No. 11694, and stated that

"Since residential customers are already producing one of the highest rates of return of any class of service, we find the allocation of rates for this class of service as set forth in Order No. 11694 to be just and reasonable. Furthermore, the cost of

service study clearly indicates that irrigation and/or drainage pumping service (Schedule 24) and special contract service are producing lower rates of return than other classes of service. By increasing Schedule 24 by 16 percent and the special contract class of service by 14 percent, we will not achieve parity among the various classes of service, but will make reasonable and needed adjustment in that direction."

The Commission then specifically found

"IV

"THAT Exhibit 75 shows that irrigation and/or drainage pumping service (Schedule 24) produces the lowest rate of return of any class of service, and that the rate for service to this class should be increased 16 percent to achieve greater parity with other classes of service."

The appellants argue that the Commission erred in failing to state the factual basis for its allocation of the rate increase among the various classes of service. They also challenge the findings of the Commission which were based on the cost of service exhibit which was used to allocate the rate increase among the various users in an attempt to reduce the disparity of rates of return among various classes of users.

The function of the Commission rate making process is a legislative one. *Petition of Mountain States Tel. & Tel. Co.,* 76 Idaho 474, 284 P.2d 681 (1955); *Idaho Underground Water Users Ass'n v. Idaho Power Co.,* 89 Idaho 147, 404 P.2d 859 (1965); *Intermountain Gas Co. v. Idaho Public Utilities Commission,* 97 Idaho 113, 540 P.2d 775 (1975).

In *Petition of Mountain States Tel. & Tel. Co., supra,* this court stated:

"The function of rate making is legislative and not judicial. The commission as the agency of the legislative department of government exercises delegated legislative power to make rates. So long as it regularly pursues its authority and remains within constitutional limitations, the courts have no jurisdiction to interfere with its determinations." 76 Idaho at 480, 284 P.2d at 683.

While the findings of fact in this proceeding might have been more explicit and detailed, the Commission recited the facts which were the basis for its determination. In view of the extensive record, both oral and documentary, presented to the Commission at the various hearings and rehearings, it appears that the Commission gave consideration to the relevant elements in the record. What was stated in *Idaho Underground Water Users Ass'n v. Idaho Power Co., supra,* is as applicable here as in that case:

> "The Commission had before it voluminous testimony concerning the economic conditions of the farming community, the future demands for power for pumping, and many other factors. Certainly we do not minimize the problems created by the 'economic squeeze' of increased costs with lowering prices, as testified to by members of appellant; but the record discloses these factors were fully considered by the Commission, and thus are not reviewable by this court, except to determine whether there was evidence to sustain the determination made [citation omitted]." 89 Idaho at 167–68, 404 P.2d at 871.

Text writers have recognized the increased complexity of the problems facing regulatory commissions of the various states when dealing with the fixing of rates and allocation of rates of return between various classes of users, and they have presented various proposals for resolution of such problems. See, Cudahy and Malko, "Electric Peak-Load Pricing: Madison Gas and Beyond," 1976 Wis.L.Rev. 47; Note: Lexonomics and the Electrical Utility Industry: In Search of the Optimal Rate Structure, 61 Iowa L.Rev. 134 (both articles discussing at length *Re Madison Gas & Electric Co.,* Docket No. 2–U–7423 (Wis. Pub. Serv. Comm'n, Aug. 8, 1974), 5 PUR 4th 28). See also, J. Bonbright, Principles of Public Utility Rates, 287 *et seq.* (1961).

The appellant has the burden to show error, *Petition of Mountain States Tel. & Tel. Co., supra.* Here we find none. The findings as heretofore stated are sufficient and sustained by substantial evidence.

The Commission urged by motion prior to oral argument that this proceeding is now moot because Idaho Power has subsequently requested and has been granted rate increases to levels beyond those sought in the present matter. It is the conclusion of the court that the present proceeding is not moot. Order No. 11694, dated November 27, 1974, must be reversed as previously discussed. Reversal of that order may have an effect upon charges for service previously paid, which should be considered by the Commission. Finally, the issues dealt with in this opinion are of continuing importance to the operation of the Commission, and for these reasons it is appropriate for this court to consider the case, notwithstanding subsequent rate increases.

The orders appealed from in Case No. 11860 (i. e., Order No. 11694 of November 27, 1974 and Order No. 11738 of January 10, 1975) are reversed.

The orders appealed from in Case No. 12023 (i. e., Order No. 11949 of June 13, 1975, and Order No. 12013, of July 28, 1975) are affirmed. No costs allowed.

SHEPARD, C. J., and DONALDSON, BAKES and BISTLINE, JJ., concur.