PIONEER TOWING, INC., Plaintiff-Appellant, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.

First District (5th Division)    No. 80-2131

Opinion filed August 14, 1981.—Rehearing denied September 4, 1981.

Lipnick, Barsy & Joseph, of Chicago (Burton Joseph, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos and James E. Weging, Assistant Attorneys General, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff filed a declaratory judgment action challenging the constitutionality of section 18a—200(3) of the Illinois Commercial Relocation of Trespassing Vehicles Law (Ill. Rev. Stat. 1979, ch. 95½, par. 18a—200) (the Act). The statute as amended by Public Acts 81-332 and 81-333, places a $35 per tow ceiling on the rates that the Illinois Commerce Commission (Commission) can set for the commercial towing or removal of trespass-

ing vehicles from private property. The trial court, upon stipulation of facts, found that the statute was a valid exercise of the legislature's authority, and therefore dismissed Pioneer's complaint. Plaintiff appeals, contending that the statute is an unconstitutional exercise of legislative power which is confiscatory (Ill. Const. 1970, art. I, §15), deprives it of property without due process of law (U.S. Const. amend. XIV; Ill. Const. 1970, art. I, §2), and constitutes special legislation (Ill. Const. 1970, art. IV, §13).

The stipulated facts at the trial court were basically as follows.

Plaintiff is a towing company which has performed services since January 1, 1979, for about 600 real estate owners in the City of Chicago. Its sole income is generated from towing and storage charges collected from vehicle owners who have trespassed on the private property of those customers with whom plaintiff has contracted.

On January 17, 1979, the Commission set interim maximum rates for relocation towers at $35 per tow and $3 per day in storage charges for vehicles left on the relocator's premises in excess of 72 hours. In response to these rates, plaintiff reduced the salaries of its five drivers. After the reduction, three drivers left plaintiff's employ, two definitely because of the reduction. Plaintiff was then forced to return the remaining driver's pay to its previous level in order to keep its business operating.

Plaintiff filed a verified petition with the Commission on May 16, 1979, requesting an emergency interim rate increase which would allow it to charge $60 per tow. It claimed that the $35 existing maximum rate allowance was confiscatory and placed the company in dire financial straits. From January 17, 1979, until the end of the year, only two towing companies applied for rates higher than the interim maximum rates.

After extensive investigation and hearings, the Commission issued an order of July 19, 1979, finding that plaintiff should be allowed to charge a "just and reasonable" rate of $45 per tow. Based on an estimate of 7,300 cars towed, plaintiff's operating cost per tow was found to be approximately $44.25. For the year ending December 31, 1979, 9,156 trespassing vehicles were actually towed to plaintiff's premises.

As a result of the amendment in question, plaintiff will be forced to reduce its rates. And if it again lowers the drivers' wages, they will quit. The Commission must approve the replacement for these employees, a procedure taking three to four weeks. Consequently, the company's business will be negatively affected.

Subsequent to the passage of the amendment to section 18a—200 of the Act imposing the $35 rate ceiling, but before its effective date, the Commission reopened plaintiff's case for hearing. At that time, plaintiff was the only towing company operating under the Act with the right to collect more than $35 per tow. On the effective date of the amendment,

plaintiff likewise was the only company authorized to collect such a charge.

OPINION

Plaintiff's sole contention is that the amendment to section 18a—200 of the Act establishing the $35 per tow ceiling is unconstitutional. The amended section reads as follows:

"The Commission shall:

* * *

(3) Set reasonable rates, *not to exceed $35*, for the commercial towing or removal of trespassing vehicles from private property."

(Emphasis added.) (Ill. Rev. Stat. 1979, ch. 95½, par. 18a—200(3).) Public Acts 81-332 and 81-333, effective January 1, 1980, both inserted the "not to exceed $35" language in subparagraph 3. Prior to this amendment, the Commission was allowed to set reasonable rates without a statutory maximum. Plaintiff argues that the maximum rate imposed by the legislature is confiscatory and unreasonable because the Commission had determined on July 18, 1979, prior to the passage of the amendment, that Pioneer would sustain a projected loss for fiscal year 1980 of $67,550 if it charged $35 per tow. This finding was reached following an adversary hearing before the Commission where oral and documentary evidence was introduced. At the hearing, Pioneer's witnesses were cross-examined by a representative of the State's Attorney's Office and the Commission's staff, and adjustments were made to the company's figure. After a thorough investigation, the Commission concluded that,

"* * * petitioner [Pioneer] has a serious need for an increase in revenue which it can only obtain through an increase in its relocation rates, and the longer the delay in implementing such increase the more serious the problem becomes * * * [P]etitioner has made an evidentiary showing that denial of interim rate relief will result in an unreasonable and harmful loss of revenue to petitioner."

In short, then, plaintiff argues that this court must find the statute in question unconstitutional since the Commission, the very agency empowered by the legislature to enforce and administer the act, found that the $35 rate was unreasonable as applied to Pioneer and harmful to the successful operation of its business.

■■ The legislature, of course, has the authority to set fair and reasonable rates to be charged by businesses affected with a public interest. (*Munn v. People* (1873), 69 Ill. 80, *aff'd* (1876), 94 U.S. 113, 24 L. Ed. 77.) A legislative enactment is presumed to be constitutional and all reasonable doubts must be resolved in its favor. (*Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 110 N.E.2d 234.) One assailing a statute has

the burden of showing that it does not rest upon any reasonable basis but is entirely arbitrary. (*Union Cemetery Association v. Cooper* (1953), 414 Ill. 23, 110 N.E.2d 239.) Applying these principles to the instant case, we must determine whether Pioneer has succeeded in its burden of establishing that the statutory $35 rate ceiling was unreasonable and arbitrary.

Before doing so, however, it is appropriate to briefly discuss the history and nature of the industry regulated in this case. At common law, one who towed an automobile from a private parking lot without the lawful possessor's consent and withheld it for failure to pay the expenses of towing and storage was guilty of conversion. (*Kunde v. Biddle* (1976), 41 Ill. App. 3d 223, 353 N.E.2d 410.) While protecting vehicle owners, this rule of law created problems for property owners in urban areas where the number of cars exceeds available street parking. A lot owner could pursue a trespass action against the vehicle owner, but this scarcely afforded a prompt, meaningful and effective resolution of the problem. The legislature, in promulgating the Act, sought to resolve this problem, avowing its purpose to "supervise and regulate the commercial removal of trespassing vehicles from private property, and the subsequent relocation and storage of such vehicles in such manner as to fairly distribute rights and responsibilities among vehicle owners, private property owners and commercial vehicle relocators * * *." (Ill. Rev. Stat. 1979, ch. 95½, par. 18a—101.) To insure these goals, the Act requires commercial vehicle relocators to adhere to various regulations. For instance, the companies must accept credit cards from owners of trespassing vehicles, secure liability insurance, and obtain written authorization from property owners who request their services. (Ill. Rev. Stat. 1979, ch. 95½, pars. 18a—501, 18a—301, 18—300(5).) In addition, both the companies and their drivers are required to be licensed. Ill. Rev. Stat. 1979, ch. 95½, pars. 18a—300(1), (2).

■■ Based upon this background, it is evident that the commercial relocation towing business, originally prohibited at common law, is now permitted to operate under the regulations imposed by the act. Such an occupation or business, which may be carried on only by permission, will justify a degree of regulation not permissible in the case of an activity pursued as a matter of right. *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 166 N.E.2d 29; *Weksler v. Collins* (1925), 317 Ill. 132, 147 N.E. 797.

■■ In order to prove a violation of due process in the present case, Pioneer must establish that the $35 rate ceiling is unreasonable for all commercial relocators operating under the act. We believe that it has failed in its burden to do so. The simple reason is that, while the Commission found that Pioneer could not operate successfully at the rate of $35 per tow, no evidence was presented showing that all others in the industry shared the same fate. In the field of commercial relocation

towing, the legislature has no duty to set rates at a level that will guarantee success to every company in the field. Indeed, competition in this area is fostered by the legislature. For example, entry into the towing business is not restricted under the Act. A license will issue to any qualified applicant if found by the Commission to be "fit, willing and able properly to perform the service proposed." (Ill. Rev. Stat. 1979, ch. 95½, par. 18a—400(d).) Moreover, although the Act forbids the removal of a vehicle more than 10 miles from its location when towed (Ill. Rev. Stat. 1979, ch. 95½, par. 18a—300(12)), it neither limits the number of lots from which a licensee may operate nor the number of property owners from whom business may be solicited. Because one may easily gain access into this industry, companies are forced to operate efficiently or face financial distress. The market will simply not support an infinite number of towing companies. Turning to the present case, we believe that if it is shown, that the rates set by the legislature are so unreasonable that the industry as a whole cannot survive, this court will invalidate the legislation on constitutional grounds. However, Pioneer's showing that it, alone, is unable to fare under the $35 per tow maximum does not overcome the presumption of the statute's validity.

In attempting to rebut this presumption, plaintiff has argued that the relocation business is "affected with a public interest" and should therefore be regulated as a public utility. Every public utility is entitled to a fair return on the value of property used in service to the public. (*Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 366 N.E.2d 945.) Therefore, the legislature, in setting rates for public utilities is burdened with the duty to protect their financial integrity and insure that they earn a reasonable profit. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 111 N.E. 329.) In *Illinois Bell Telephone*, our supreme court commented on the standards for regulating rates of public utilities as follows:

"In the final analysis, the rates fixed by it (in fixing prices as low as possible for the general public purchasing the services) should be sufficient to provide for operating expenses, depreciation, reserves that are necessary in good business judgment and operations and a reasonable return to the investor on the basis of fair value of the utility property." 414 Ill. 275, 286, 111 N.E. 329, 335.

Generally, public utilities are afforded such financial safeguards because of the unique position they occupy in the market place. It is the policy of the State to prevent rather than promote competition among public utilities, since the method of regulation of public utilities is based on the theory of regulated monopoly rather than competition. (*Gulf Transport Co. v. Illinois Commerce Com.* (1948), 402 Ill. 11, 83 N.E. 336.) This policy is premised on the belief that competition does not promote

efficient public service. (*Illinois Power & Light Corp. v. Commerce Com.* (1926), 320 Ill. 427, 151 N.E. 236.) For instance, no public utility can commence operations until it has received from the Commission a certificate that public convenience and necessity require the transaction of such business. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 56.) This requirement limits the number of public utilities in a given area, since a second utility cannot be authorized to serve unless there is evidence that the existing utility cannot adequately do so. (*Illinois Highway Transportation Co. v. Commerce Com.* (1950), 404 Ill. 610, 90 N.E. 86.) Furthermore, every public utility has a duty to serve all qualified applicants. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 38.) Since public utilities are compelled to serve customers, the State must allow them to charge rates sufficient to make a reasonable return on their investment. Otherwise, there would be a deprivation of the investor's property without due process of law. See *City of Edwardsville v. Illinois Bell Telephone Co.* (1923), 310 Ill. 618, 142 N.E. 197.

Relocation towers, on the other hand, differ vastly from public utilities and do not enjoy the same standard of financial protection. The prime difference is that towers are not compelled to serve the public. Competition is determined by market conditions and is not artificially regulated by the issuance of certificates based upon the public need. Thus, while some companies may flourish, others might be expected to become insolvent when the number of towers exceeds the available business. Since relocation towers are not compelled to serve the public, they cannot complain that they are being forced by the legislature to operate their businesses at a loss. They voluntarily chose to enter the industry with its attendant opportunities and risks. Therefore, the legislature only has a duty to set rates which are reasonable for the industry as a whole. It need not assure each and every towing company of continued existence.

In summary, we have concluded that plaintiff has not sustained its burden of proving that the $35 rate ceiling imposed upon the relocation towing industry is unreasonable. Plaintiff has only shown that the rate is unreasonable as applied to it, alone. The nature of plaintiff's business does not allow it the protections extended to public utilities.

Therefore, we believe that the trial court correctly found the statute to be constitutional and properly dismissed plaintiff's action.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.