ALASKA PUBLIC UTILITIES COMMIS-
SION and the Municipality of Anchor-
age, d/b/a Municipal Light and Power
Department, Appellants,

v.

CHUGACH ELECTRIC ASSOCIATION,
INC., Appellee.

CHUGACH ELECTRIC ASSOCIATION,
INC., Cross-Appellant,

v.

ALASKA PUBLIC UTILITIES COMMIS-
SION and the Municipality of Anchor-
age, d/b/a Municipal Light and Power
Department, Cross-Appellees.

Nos. 2969, 2993.

Supreme Court of Alaska.

May 26, 1978.

Jeffrey B. Lowenfels, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant and cross-appellee, Alaska Public Utilities Commission.

Peter C. Ginder, Asst. Municipal Atty., Karen D. Nagel, Associate Counsel, Richard W. Garnett, III, Municipal Atty., Anchorage, for appellant and cross-appellee, Municipality of Anchorage.

William J. Moran, Anchorage, for appellee and cross-appellant.

Before BOOCHEVER, Chief Justice, and CONNOR and BURKE, Justices.

## OPINION

BURKE, Justice.

This appeal and cross-appeal require us to review a determination of the Alaska Public Utilities Commission (hereinafter referred to as the Commission) regarding the delineation of service area boundaries of the Municipal Light and Power Department

of the Municipality of Anchorage (hereinafter referred to as ML&P) and the Chugach Electric Association (hereinafter referred to as Chugach).

The present controversy began nearly seven years ago when ML&P filed an application before the Commission for a certificate of public convenience and necessity pursuant to AS 42.05.221.[1] ML&P requested authority to furnish electric service throughout a service area situated within and immediately adjacent to the then City of Anchorage. At the time of filing, ML&P was operating an extensive network of electric generation, transmission, and distribution facilities for which Commission certification was not required prior to January 1, 1971.

After reviewing ML&P's application, the Commission determined that identical services were being offered in many instances by Chugach, which was operating under a certificate of public convenience and necessity granted to it in 1963. AS 42.05.221(d)[2] provides that where the Commission determines that two or more public utilities are competing to furnish identical utility service and that this competition is not in the public interest, the Commission is to take

appropriate action to eliminate the competition and any undesirable duplication of facilities. Pursuant to this section, the Commission issued Order No. 1 on March 11, 1971, seeking the advice and assistance of ML&P and Chugach in implementing a plan to eliminate such competition and duplication.

In response to Order No. 1, ML&P and Chugach filed briefs outlining their respective views as to how the Commission should proceed. Both parties submitted proposed orders to establish a negotiating committee that would allow the utilities to reach agreement on a voluntary basis. On August 31, 1971, the Commission by Order No. 9 established the requested negotiating committee, composed of members from each of the utilities and one Commission staff member who was to serve as a coordinating chairman. The Commission also established interim service areas during this period.

After several months of negotiations the parties' efforts to reach agreement proved unsuccessful. The Commission then ordered each party to submit, among other things, proposed solutions to the service area dispute. Upon reviewing the proposed

1. AS 42.05.221 provides in relevant part:

   *Certificates required.* (a) No public utility may operate and receive compensation for providing a commodity or service after January 1, 1971 without first having obtained from the commission under this chapter a certificate declaring that public convenience and necessity require or will require the service. Where a public utility provides more than one type of utility service, a separate certificate of convenience and necessity is required for each type. A certificate shall describe the nature and extent of the authority granted in it, including, as appropriate for the services involved, a description of the authorized area and scope of operations of the public utility.

   .     .     .     .     .

   (c) A certificate shall be issued to a public utility which was not required to have one before July 1, 1970, and which is required to have one after that date, if it appears to the commission that the utility was actually operating in good faith on that date. Such a certificate is subject to modification where there are areas of conflict with other public utilities or where there has been a substantial change in circumstances.

2. AS 42.05.221(d) states:

   In an area where the commission determines that two or more public utilities are competing to furnish identical utility service and that this competition is not in the public interest, the commission shall take appropriate action to eliminate the competition and any undesirable duplication of facilities. This appropriate action may include, but is not limited to, ordering the competing utilities to enter into a contract which, among other things would: ·

   (1) delineate the service area boundaries of each in those areas of competition;

   (2) eliminate existing duplication and paralleling to the fullest reasonable extent;

   (3) preclude future duplication and paralleling;

   (4) provide for the exchange of customers and facilities for the purposes of providing better public service and of eliminating duplication and paralleling; and

   (5) provide such other mutually equitable arrangements as would be in the public interest.

recommendations by each utility, the Commission concluded that neither plan provided an equitable solution to the problem.

On September 19, 1972, public hearings were commenced to afford both ML&P and Chugach the opportunity to augment their written filings and to cross-examine the other party on its proposal. Extensive testimony was taken, following which the parties submitted additional briefs. On September 27, 1973, the Commission issued Order No. 19 which, among other things, assigned firm, fixed service areas to each of the utilities. It is this Order, as amended by Order No. 20, which led to these appeals.

Pursuant to 3 AAC 48.090(e),[3] Chugach, on December 3, 1973, petitioned the Commission for reconsideration of Order No. 19 and for the re-opening of the proceedings to receive additional evidence. No action was taken on the petition for 30 days and thus it was automatically denied under 3 AAC 48.-090(e).

On February 1, 1974, Chugach gave notice of its appeal to the superior court from Order No. 19, as amended by Order No. 20. On April 30, 1976, oral argument was heard before the superior court. At the close of the proceedings the trial court held that there was insufficient evidence to support the Commission's conclusions in Order No. 19 and remanded the matter to the Commission for reconsideration. This appeal and cross-appeal followed. We will discuss the issues raised in Chugach's cross-appeal first.

## CROSS–APPEAL

The service area granted to ML&P by the Commission in Order No. 19 included several areas which had been granted to Chugach in its 1963 certificate of public convenience and necessity. These areas were within the corporate limits of the former City of Anchorage where the two utilities were operating duplicate or parallel electrical facilities. In its cross-appeal, Chugach claims that its right to provide service within its certificated area is a vested property interest which was improperly taken without due process of law when the Commission granted to ML&P the right to offer service within portions of Chugach's certificated service area. In order to adequately set out Chugach's claim and resolve this question, it is first necessary for us to outline briefly the statutory history of pertinent portions of what is now entitled the Alaska Public Utility Commission Act (hereinafter referred to as the Act).

Utility regulation on a statewide basis in Alaska first became a reality upon passage, by the first state legislature, of Chapter 199, SLA 1959. This act established the Alaska Public Service Commission. However, its application to electric, telegraphic and telephonic utilities was held in abeyance pending submission of a report to the legislature by the newly formed Commission.

In 1963, AS 42.05 et seq. was amended in several respects by Chapter 95, SLA 1963. AS 42.05.193 required for the first time that certificates be obtained. That section stated:

*Certificates of Convenience and Necessity.* No public utility shall operate after January 1, 1964, without first having

---

**3.** 3 AAC 48.090(e) provides:

Within 15 days after an order of the commission is served, a party may file a petition for reconsideration of the order that is served setting forth specifically the grounds upon which the petitioner believes the order is unreasonable, erroneous, unlawful or otherwise defective. The petitioner may also submit a proposed order designed to cure the alleged defects of the commission's order. A party opposing a petition for reconsideration shall have 10 days in which to respond. The commission's power to order reconsideration expires 30 days after the date that the order designated in the petition for reconsideration is served on the petitioner. If the commission takes no action on a petition for reconsideration within the time allowed for ordering reconsideration, the petition is automatically denied. The commission may order reconsideration of all or part of the record in a proceeding and any additional evidence and argument it may permit either in writing or orally. The mere filing of a petition for reconsideration does not excuse the petitioning party from compliance with a decision or order of the commission.

obtained from the commission under the provisions of this chapter a certificate declaring that public convenience and necessity require or will require the operation and delineating the area where service is to be provided.

AS 42.05.194, however, granted "grandfather rights" to those utilities then operating:

> *Certificates Granted to Existing Utilities.* A Certificate shall be granted if it appears to the commission that the public utility was actually operating in good faith on October 15, 1962, within the confines of the requested area, or that the public utility was installing the facilities necessary to furnish service under a franchise as of that date.

It was under this section of the 1963 Act that Chugach obtained its certificate.

In requiring public utilities to obtain certificates in order to operate, the legislature also added the following provision, AS 42.-05.196, upon which Chugach places great reliance:

> *Power of Commission to Grant Certificate.* The commission shall have the power after hearing, upon reasonable notice to interested parties, to grant a certificate to provide service in an area already served by a certificate holder only when the existing public utility or utilities serving the area are not providing and will not provide service to the satisfaction of the commission. In all other cases, the commission with or without hearing may issue a certificate as requested or for good cause shown deny the same in whole or part.

In addition, AS 42.05.640(2) was amended to exclude municipally-owned utilities from regulation under the Act. It was this provision which allowed ML&P to furnish electrical services without a certificate of public convenience and necessity at that time.

The statutes regulating public utilities were again amended in 1970, pursuant to Ch. 113, SLA 1970. Several extensive changes are relevant to this appeal. The definition of "public utility" or "utility" was amended to include municipally-owned utilities. AS 42.05.701(2). As a result of this, municipally-owned utilities, including ML&P, were required to obtain certificates of convenience and necessity in order to operate. In addition, AS 42.05.194, AS 42.-05.195 and AS 42.05.196, quoted above, were repealed.

In place of those repealed sections, AS 42.05.221 was enacted.[4] This statute requires public utilities to obtain certificates of convenience and necessity as a condition of operation. Subsection (c) gave "grandfather rights" to existing utilities newly subject to regulation. Subsection (b), which is significant in the instant case, provides:

> All certificates of convenience and necessity issued to a public utility before July 1, 1970 remain in effect but they are subject to modification where there are areas of conflict with public utilities that have not previously been required to have a certificate or where there is a substantial change in circumstances.

This subsection was supplemented by AS 42.05.271, which provides for the modification, suspension or revocation of certificates for several listed reasons, including the requirements of public convenience and necessity.[5]

Within the context of this statutory history, Chugach's claim on cross-appeal can now be more fully understood. At the time Chugach was certificated, AS 42.05.196, quoted above, provided that a competing utility could be certificated in the same area as a certificate holder only if the certificate holder did not and would not furnish service in that area to the satisfaction

4. *See* notes 1 and 2 *supra* for relevant parts.

5. AS 42.05.271 states in pertinent part:
   *Modification, suspension or revocation of certificates.* Upon complaint or upon its own motion the commission, after notice and opportunity for hearing and for good cause

shown, may amend, modify, suspend, or revoke a certificate, in whole or in part. Good cause for amendment, modification, suspension or revocation of a certificate includes
   (1) the requirements of public convenience and necessity; . . .

of the Commission. Chugach contends that its right to provide electrical service within its certificated area became a vested right at the time of its certification, subject to divestment only if its service in that area was unsatisfactory to the Commission under AS 42.05.196. Because this right vested prior to the repeal of AS 42.05.196 in 1970, Chugach argues it is still entitled to the application of that section of the statute under Alaska's general saving statute, AS 01.10.100.[6] Thus, Chugach maintains, the Commission denied Chugach its right to due process with regard to its vested property interest when it granted ML&P the right to serve portions of Chugach's certificated area without first finding that Chugach had not and would not perform satisfactorily in that area.

In order to sustain Chugach's claim, we must first find that Chugach's 1963 certificate gave it a vested right to provide service in its certificated area barring a finding by the Commission that its services were unsatisfactory. Then we must find that this right was preserved under the Alaska saving statute despite the repeal of those sections in the former Act upon which this right depends. We conclude that the saving statute does not preserve any accrued right which Chugach may have had and thus it is unnecessary for us to determine whether in fact Chugach did have such a right.

> AS 01.10.100(a) provides in relevant part: The repeal or amendment of any law does not release or extinguish any . . . right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right . . . .

We note that the term "right" has been construed to mean a vested right and that vested property rights are protected from state action under the Fourteenth Amendment of the United States Constitution and Art. I, section 7, of the Alaska Constitution. *Bidwell v. Scheele*, 355 P.2d 584, 586 (Alaska 1960).

The law regarding general saving statutes was succinctly stated by the court in *Territory of Alaska v. American Can Company*, 137 F.Supp. 181, 16 Alaska 71, 76 (1956),[7] as follows:

> It is a fundamental rule of statutory construction that a general saving clause or statute preserves rights and liabilities which have accrued under the act repealed and that they operate to make applicable in designated situations the law as it existed before the repeal, *unless such application is negatived by the express terms or clear implication of a particular repealing act*, or where not otherwise provided by the repealing act. (emphasis in original).

The saving statute in effect at that time was somewhat different from the present one but the court's statement accurately reflects the general rule. As stated in Sutherland, *Statutory Construction* (4th ed. C.D. Sands 1973), a general saving statute will save rights and remedies "except where a subsequent repealing act indicates that it was not the legislative intention that particular rights and remedies should be saved." *Id.* at § 47.13. *See Summit Beach, Inc. v. Glander*, 153 Ohio St. 147, 91 N.E.2d 10, 11–12 (1950); *State v. Chicago Great Western Ry. Co.*, 222 Minn. 504, 25 N.W.2d 294, 297–98 (1946).

Section 5 of Ch. 113, SLA 1970, specifically repealed AS 42.05.193, AS 42.05.194 and AS 42.05.196, the sections on which Chugach's claimed property right depends. In

---

**6.** AS 01.10.100 provides in relevant part:

*Effect of repeals or amendments.* (a) The repeal or amendment of any law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The

law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

**7.** *Aff'd* 246 F.2d 493, 17 Alaska 280 (9th Cir. 1957), *rev'd on other grounds* 358 U.S. 224, 79 S.Ct. 274, 3 L.Ed.2d 257 (1959).

their place the legislature enacted AS 42.-05.221.[8] Subsection (b), which was noted above, states as follows:

All certificates of convenience and necessity issued to a public utility before July 1, 1970 remain in effect *but they are subject to modification where there are areas of conflict with public utilities that have not previously been required to have a certificate* or where there is a substantial change in circumstances. (emphasis added).

It is clear that the emphasized portion of this subsection specifically addresses itself to 'a situation such as the present one, *i. e.*, where a previously certificated utility (Chugach) is providing service in an area where a utility which has not previously been required to be certificated (ML&P) is also furnishing electric service. The legislature has decreed that the certificate of the previously certificated utility may be modified where such a conflict exists. By this statement the legislature clearly has extinguished whatever right Chugach may have had to continue providing service unless it was doing so unsatisfactorily and in its place the legislature has determined that the existence of a conflict with a municipally-owned utility in itself provides a sufficient ground for modification of a previously granted certificate. Assuming, *arguendo*, that Chugach did have the vested property right it has claimed, the legislature's mandate in the very situation presented here is clear. In enacting AS 42.05.221(b) the legislature indicated its intention that any right afforded certificated utilities un-

der the old AS 42.05.196 was not saved. We hold, therefore, that the saving statute, AS 01.10.100, does not preserve any right Chugach may have had to continue providing electrical service unless it was not providing or would not provide service to the satisfaction of the Commission. Chugach, therefore, has not been denied due process by the Commission's failure to make such a finding.[9]

## APPEAL

Appellants ML&P and the Commission's first argument on appeal is that the superior court used an incorrect standard of review in reaching its decision to remand the case to the Commission. The Commission argues that the lower court improperly substituted its judgment for that of the Commission while ML&P contends that the lower court improperly applied the substantial evidence test. Both parties maintain that the proper standard of review is the reasonable basis test.

At the outset we note that it is unclear from a reading of the superior court's oral decision which standard of review it applied. This lack of clarity is not significant, however, for we approach the issues here independently of the superior court which was acting as an intermediate court of appeal. *Jager v. State*, 537 P.2d 1100, 1106 (Alaska 1975); *State v. Marathon Oil Company*, 528 P.2d 293, 298 (Alaska 1974).

▬▬ This court has enunciated several standards of review of agency action under AS 44.62.570,[10] the section of the Alaska

8. *See* notes 1 and 2 for relevant parts.

9. In its statement of issues presented for review and in its conclusion, Chugach suggests that its certificate of public convenience and necessity is a franchise or contract which is entitled to constitutional protection against impairment. However, because Chugach does not argue this issue beyond a passing reference to it in the argument portion of its brief, we do not consider the issue on review. *See Kristich v. State*, 550 P.2d 796, 804 (Alaska 1976); *Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970).

10. AS 44.62.570 provides in part:

*Scope of review.* (a) An appeal shall be heard by the superior court sitting without a jury.

(b) Inquiry in an appeal extends to the following questions: (1) whether the agency has proceeded without, or in excess of jurisdiction; (2) whether there was a fair hearing; and (3) whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

(c) The court may exercise its independent judgment on the evidence. If it is claimed that the findings are not supported by the

Administrative Procedure Act governing scope of review. We do not find it necessary to discuss each of the various standards at this time, however, for it is clear that the appropriate standard of review in the instant case is the reasonable basis test.[11] In *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971), we set forth this test as follows: In cases where a decision involves administrative expertise as to either complex subject matter or fundamental policy formulations, deference should be given to an administrative determination if it has a reasonable basis in law and fact.[12] Such deference is given because the agency is in a better position to make such a determination than a court because of the agency's specialized knowledge in a field. In the instant case, it is readily apparent that the delineation of electrical service areas involves complex financial and engineering determinations and requires considerable expertise in these areas. In addition, fundamental policy formulations are involved in the Commission's task of eliminating undesirable competition and duplication of facilities under AS 42.05.221(d). It is difficult, in fact, to conceive of a situation where the reasonable basis test is more appropriate. Therefore, we limit our review in this case to deciding whether the Commission's action in Order No. 19, as amended, has a reasonable basis in law and fact.

Before we can make this determination, however, it is necessary for us to deal with several other issues raised by appellants. Both ML&P and the Commission argue on appeal that the trial court erred in relying on Chugach's alleged misrepresentation regarding a "Statement of Position" by Mr. Hendershot, one of the commissioners involved in Order No. 19. This statement explained why no action was taken on Chugach's petition for reconsideration and set forth certain problems Mr. Hendershot saw in Order No. 19. Since, as noted above, we review this case independently of the superior court, we need not decide whether the lower court erroneously relied on the alleged misrepresentation.

Appellants also argue that the superior court erred in considering an affidavit by T. Foley Treadway, president of the Georgia-based Southern Engineering Company, which Chugach had submitted to the Commission as part of its petition for reconsideration. Again, we need not decide whether the lower court erred in this regard; however, it is necessary for us to determine if and to what extent this court may consider the affidavit.

ML&P and the Commission argue this point somewhat differently, but the gist of their arguments [13] is that it is improper for

evidence, abuse of discretion is established if the court determines that the findings are not supported by (1) the weight of the evidence, or (2) substantial evidence in the light of the whole record.

(d) The court may augment the agency record in whole or in part, or hold a hearing de novo. If the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing, the court may (1) enter judgment as provided in (e) of this section and remand the case to be reconsidered in the light of that evidence; or (2) admit the evidence at the appellate hearing without remanding the case.

(e) The court shall enter judgment setting aside, modifying, remanding, or affirming the order or decision, without limiting or controlling in any way the discretion legally vested in the agency.

11. For a summary of the different standards of review, see *Jager v. State*, 537 P.2d 1100, 1107 (Alaska 1975).

12. *See generally Jager v. State, supra*; *Mobil Oil Corp. v. Local Boundary Commission*, 518 P.2d 92, 99 (Alaska 1974); *Swindel v. Kelly*, 499 P.2d 291 (Alaska 1972); *Pan American Petroleum Corp. v. Shell Oil Co.*, 455 P.2d 12 (Alaska 1969).

13. ML&P also argues that once the Commission failed to give the relief sought in Chugach's petition for reconsideration, the record closed and review is limited to examination of the testimony and exhibits presented at the hearings on Order No. 19. This contention is without merit. AS 44.62.560(c) which determines the contents of the record on judicial review of administrative decisions states:

The complete record includes (1) the pleadings, (2) all notices and orders issued by the

the reviewing court to consider the Treadway affidavit because the affidavit presents evidence which could have been presented to the Commission before it entered Order No. 19 but which was not presented at that time. Appellants contend that Chugach should not be allowed to introduce new, previously available evidence under this circumstance by simply attaching such evidence to its administrative petition for reconsideration.

In refuting this argument by appellants, Chugach maintains that it did not and does not intend to introduce the Treadway affidavit as evidence, but rather as argument going to prove the unreasonableness as a matter of law of the Commission's Order No. 19. Chugach points out in its brief that had the shortcomings of the order been noted in its memorandum in support of its petition for reconsideration rather than in an affidavit, the appellants would have found no reason to move for its elimination from the record. Submitting the argument in the form that it did, Chugach contends, merely made it more penetrating and convincing. We find Chugach's contention persuasive and therefore hold that the Treadway affidavit is properly before this court on review not as evidence, but as part of Chugach's argument that Order No. 19, as amended, did not have a reasonable basis.

■ We now turn to the question of whether the Commission's order has a reasonable basis. Order No. 19, as amended, makes two determinations relevant to this appeal: First, it delineates fixed service areas for each utility; second, it provides for the retirement and transfer of facilities from Chugach to ML&P in areas where the two utilities have duplicate or parallel facilities. We will address these components of the order separately, although we realize that the two facets of the order in fact may be related.

Initially, we find it helpful to set out that aspect of the service area delineation which is the major source of contention in this case. Stated briefly, the dispute centers on the Commission's grant to ML&P of virtually all areas within the limits of the former City of Anchorage in which the two utilities were providing duplicate and parallel service. It is not the fact that fixed service areas were established by the order that is in question; rather, it is the Commission's decision regarding the service areas actually assigned which must be reviewed for reasonableness.

After a lengthy recitation of the events leading up to the issuance of its order, including a summary of the proposals submitted by ML&P and Chugach and the testimony presented at the September 1972 hearings, the Commission in Order No. 19 assigned fixed service areas to each of the utilities. Essentially, the Commission awarded ML&P two non-contiguous sub-areas. In one of the sub-areas, ML&P was already the sole supplier of electrical services except for infrequent minor border area penetrations by Chugach. In the other, there was either no present supplier, ML&P was the sole supplier, or Chugach and ML&P were operating duplicate or parallel facilities. Chugach was awarded most of the remaining portions of its certificated service area.

Following its assignment of service areas the Commission provided the following basis for its decision:

In establishing the above service area boundaries between CEA and ML&P, extensive consideration was given to the requirements that ML&P be afforded the necessary opportunity for horizontal growth and that the existing revenue base of CEA be preserved.

\* \* \* \* \* \*

Classification 8, "all other documents in the case," clearly acts to make Chugach's petition, with its attached affidavits, part of the record on review.

The Commission recognized in assigning ML&P almost all areas within the city in which duplication exists, that without compensating factors the gradual phase out of facilities and customers by CEA would progressively reduce that utility's revenues. Such effect, however, should be offset adequately by CEA's exclusive authorization to serve the rapidly expanding business and residential communities immediately outside ML&P's service boundaries.

In our view, that portion of the Commission's order establishing service areas for Chugach and ML&P had a reasonable basis. Acting pursuant to the mandate of AS 42.-05.221(d), the Commission allocated service areas in such a way as to resolve the competing interests of both Chugach and ML&P and the public they serve. Therefore, we affirm that portion of Order No. 19.

As noted above, Order No. 19 also provided for the retirement and transfer of facilities from Chugach to ML&P in those areas where the two utilities were operating duplicate and parallel facilities. The Commission did not order the immediate transfer of Chugach's facilities because it felt that to do so could result in increased rates and would jeopardize Chugach's financial integrity. Instead, the Commission provided that Chugach would be allowed to retain and operate its existing facilities within ML&P's newly-awarded service areas for the "normal life" of these facilities. As these facilities were "retired", ML&P would then be permitted to construct and operate the replacement facilities. In addition, it was provided that Chugach could perform routine and emergency maintenance on its old facilities so long as the maintenance did not constitute an attempt to extend the life of the facility beyond its

normal life. Finally, the Commission established procedures whereby either utility, when circumstances so dictated, could construct or install additional facilities within the authorized service area of the other utility.

Our examination of the record in this case, particularly of the Treadway affidavit submitted by Chugach in support of its petition for reconsideration, persuades us that these portions of Order No. 19 lack a reasonable basis and that a remand to the Commission is required for further evidence regarding the retirement and transfer of Chugach's facilities to ML&P.[14] In his affidavit, Treadway discusses at great length the inadequacy of the transfer of facilities scheme set out in Order No. 19. At the outset, for example, he points out that it is unclear from the order exactly what the Commission means by retirement of facilities. Theoretically, retirement could occur when the facilities are fully depreciated on Chugach's books or when they physically have no remaining useful life. Furthermore, the term "facilities" could mean either an entire distribution line, circuit or section of a system, or it could mean simply units or components of a system.

More significantly, Treadway asserts that in reality, electrical service facilities are never retired, either actually or on the books. This is because it is necessary to maintain these facilities in good working condition so that they may continue to provide adequate service. Separate components of a distribution system may be retired at a given point due to damage or wear, but they must be replaced for the system to continue in operation. Thus, Treadway points out, not only is an electrical facility never fully retired, but, despite the Commission's order that no replacement or maintenance of a facility be done with

---

14. ML&P contends that Chugach may not challenge the retirement and transfer provisions of Order No. 19 because the Commission specifically limited the scope of the hearings to delineation of service areas, reserving the transfer issue to a later time. It is contended that Chugach concurred in such a postponement and that therefore Chugach is estopped from now requesting that the proceeding be reopened for further evidence on this issue. We find it immaterial whether or not the retirement and transfer issues were in fact postponed until a later time since the Commission chose to deal with this problem in Order No. 19.

the intent to extend its useful life, such replacement or maintenance must necessarily extend the life of the property.

The Treadway affidavit contains many other criticisms of the retirement and transfer provisions of Order No. 19 which we do not feel are necessary to recite here since we are persuaded that it is necessary for the Commission to reconsider these provisions of Order No. 19. Therefore we remand this case to the superior court with directions that the case be remanded to the Commission so that it may take further evidence and such other action as it deems necessary regarding the retirement and transfer of Chugach's facilities to ML&P.

REMANDED.

RABINOWITZ and MATTHEWS, JJ., not participating.