**CHUGACH ELECTRIC ASSOCIATION., INC., Appellant,**

v.

**REGULATORY COMMISSION OF ALASKA and Municipality of Anchorage d/b/a Municipal Light & Power, Appellees.**

No. S–9692.

Supreme Court of Alaska.

June 21, 2002.

---

Andrew F. Behrend, Heller Ehrman White & McAuliffe, Anchorage; Michael C. Dotten; Heller Ehrman White & McAuliffe, Portland; and Donald W. Edwards, Chugach Electric Association, Anchorage, for Appellant.

Ron Zobel, Assistant Attorney General, Clyde E. Sniffen, Jr., Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee Regulatory Commission of Alaska.

Paul J. Jones, Assistant Municipal Attorney, and William A. Greene, Municipal Attorney, Anchorage, for Appellee Municipality of Anchorage d/b/a Municipal Light & Power.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

This case requires us to determine whether an electric utility that supplies electric service within a specific geographic area pursuant to a certificate of public convenience and necessity must obtain regulatory commission approval before selling power outside its assigned geographic area. Because AS 42.05.221(a) requires a utility to obtain an additional certificate for each type of utility service it provides and because the appellant in this case did not obtain such a certificate, we affirm the decision of the Regulatory Commission of Alaska.

## II. FACTS AND PROCEEDINGS

Chugach Electric Association, Inc. (Chugach) is an electric utility that has received a certificate of public convenience and necessity from the Regulatory Commission of Alaska [1] (commission) to supply electric service to consumers within a specific geographic area. Anchorage Municipal Light and Power (ML&P) is also a public utility authorized to provide electric service to consumers under a certificate of public convenience and necessity.

In the fall of 1997, Chugach offered to sell electricity directly to two commercial customers who were requesting it from Chugach. Because these customers were located in the service area designated for ML&P, Chugach offered to compensate ML&P for distributing the electricity as well as metering and related services [2] at a rate to be determined by the commission.

ML&P responded to Chugach's offer by filing a complaint with the commission alleging that Chugach was violating Alaska law by attempting to serve customers outside its geographic area. ML&P asked the commission to enjoin Chugach from providing elec-

---

1. In 1999 the name of the Alaska Public Utilities Commission was changed to the Regulatory Commission of Alaska in accordance with ch. 25, § 30(a), SLA 1999.

2. ML&P had already established its right to provide distribution service in the geographic area involved in this case. *Alaska Pub. Utils. Comm'n*

*v. Chugach Elec. Ass'n*, 580 P.2d 687 (Alaska 1978), *rev'd on other grounds by City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979). Thus, Chugach in this case sought to provide only the commodity of electricity over ML&P's lines to customers requesting electricity from Chugach.

tricity outside that area. Chugach, allowed to intervene, maintained that although ML&P had a lawful monopoly over distribution services[3] in the area, it did not have a monopoly over the electricity itself as a commodity and therefore could not prevent consumers from purchasing electric power as a commodity from other suppliers. Chugach additionally claimed that ML&P violated federal antitrust law by preventing Chugach from selling electricity over ML&P's lines. Chugach then asked the commission for a declaratory judgment that ML&P was not entitled to "monopolize sales of electric power to customers who receive transmission and distribution services from ML&P." Chugach also asked the commission for a ruling compelling ML&P to deliver, under appropriate tariffs to be approved by the commission, Chugach's electricity to willing buyers in ML&P's distribution area.

Both parties moved for summary judgment. The commission held that "[t]he Legislature's charge in AS 42.05.221(d) to the Commission to eliminate competition that the Commission finds is not in the public interest impliedly authorizes the Commission to grant monopolies when competition is not in the public interest." The commission also held that the provision of electric power constituted a service and therefore was subject to AS 42.05.221(a). It further held that AS 42.05.221(d) does not restrict the commission's authority to regulate competition between electric facilities to only those areas where duplication of facilities and competition already exists. Finally, the commission ruled that federal antitrust principles did not apply, but that if they did apply, ML&P

would be immune under the state action doctrine. Accordingly, the commission ruled in ML&P's favor.

On appeal, Superior Court Judge Sen K. Tan affirmed the commission's order and final judgment. In his decision, Judge Tan ruled that AS 42.05.221(a) requires Chugach to obtain prior approval from the commission before selling electricity outside of its allotted geographical area. The superior court also concluded that the commission's interpretation of state law did not implicate any federal antitrust legal doctrines or principles, and that the state action immunity doctrine applied and was satisfied.

Chugach now appeals to this court.

## III. STANDARD OF REVIEW

■ In an administrative appeal where the superior court acts as an intermediate appellate court, we directly review the agency action in question.[4]

■ Chugach and the commission agree that the issues before this court are not matters "that fall within [the commission's] unique expertise"[5] as this issue presents a matter of strict statutory construction.[6] Because no agency expertise is involved, we review the commission's statutory construction under an independent judgment standard.[7] "As we substitute our judgment, it is our duty 'to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[8]

■ We review the commission's findings of fact for clear error and reverse only if there is not substantial evidence to support

---

3. " '[D]istribution services' . . . refers to delivery or distribution unbundled from the sale of the commodity—in this case the sale of electric power." Harvey L. Reiter, *Competition Between Public and Private Distributors In a Restructured Power Industry*, 19 ENERGY L.J., 333, 334 n. 3 (1998). Chugach thus attempted to engage in "retail wheeling" with ML&P, the process by "which utilities deliver electric power sold by a third party directly to retail customers" allowing an individual retail customer "to choose his or her electricity supplier, but still receive delivery using the power lines of the local utility." Scott B. Finlinson, *The Pains Of Extinction: Stranded Costs In The Deregulation Of The Utah Electric Industry*, 1998 UTAH L.REV. 173, 187 n. 109.

4. See *N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

5. *Tlingit–Haida Reg'l Elec. Auth. v. State*, 15 P.3d 754, 761 (Alaska 2001).

6. *Nat'l Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 815 (Alaska 1982).

7. *Id.*

8. *Cook Inlet Pipe Line Co. v. Alaska Pub. Utils. Comm'n*, 836 P.2d 343, 348 (Alaska 1992) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

the findings.[9] "However, even under the independent judgment standard [we have] noted that the court should give weight to what the agency has done, especially where the agency interpretation is longstanding."[10]

## IV. DISCUSSION

**Chugach Must First Obtain a Certificate of Public Convenience and Necessity Before Attempting To Sell Its Electricity.**

Chugach maintains that the commission does not have the authority to restrain competition between electric utilities by prohibiting Chugach from selling electricity without first obtaining a second certificate of public convenience and necessity to serve power in a particular geographic location. Instead, Chugach argues, the commission may only limit competition for a commodity such as the sale of electricity once it has determined the utilities are already competing and that such competition is not in the public interest.[11] ML&P and the commission argue that the statutory language is clear that an additional certificate is needed for each new use and that only in instances where a certificate has been previously obtained does AS 42.05.221(d) apply.

Alaska Statute 42.05.221(a) provides:

A public utility may not operate and receive compensation for providing a commodity or service without first having obtained from the commission under this chapter a certificate declaring that public convenience and necessity require or will require the service. Where a public utility provides more than one type of utility service, a separate certificate of convenience and necessity is required for each type. A certificate must describe the nature and extent of authority granted in it, including, as appropriate for the services involved, a description of the authorized area and scope of operations of the public utility.

Alaska Statute 42.05.221(d) provides:

In an area where the commission determines that two or more public utilities are competing to furnish identical utility service and that this competition is not in the public interest, the commission shall take appropriate action to eliminate the competition and any undesirable duplication of facilities. This appropriate action may include, but is not limited to, ordering the competing utilities to enter into a contract that, among other things, would:

(1) delineate the service area boundaries of each in those areas of competition;

(2) eliminate existing duplication and paralleling to the fullest reasonable extent;

(3) preclude future duplication and paralleling;

(4) provide for the exchange of customers and facilities for the purposes of providing better public service and of eliminating duplication and paralleling; and

(5) provide such other mutually equitable arrangements as would be in the public interest.

Chugach argues that by not making findings under AS 42.05.221(d), the commission placed a prior restraint on the competition for utilities authorized to provide a particular type of service. It argues that the correct interpretation of the two provisions of AS 42.05.221 is that a public injury and a finding of competition must first be made before the commission can restrict competition between electric utilities that already have certificates to provide electric service to the public. It claims that any other interpretation would render AS 42.05.221(d) meaningless.

1. **Whether Chugach has the right to provide electric service within ML&P's area is not precluded by collateral estoppel.**

ML&P argues that the commission has already applied AS 42.05.221(d) to eliminate competition between Chugach and ML&P. Therefore, it argues that consideration of this

---

**9.** *Tlingit–Haida Reg'l Elec. Auth.*, 15 P.3d at 761.

**10.** *Nat'l Bank of Alaska*, 642 P.2d at 815 (*citing State, Dep't of Revenue v. Debenham Elec. Supply Co.*, 612 P.2d 1001, 1003 n. 6 (Alaska 1980)).

**11.** AS 42.05.221(d).

issue is barred by the doctrine of collateral estoppel.

■ Collateral estoppel bars the relitigation by parties of an issue when:

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved by final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[12]

Chugach and ML&P have long been parties in litigation against each other resulting in an AS 42.05.221(d) determination establishing specific geographical areas in which each utility could provide its service.[13] In that earlier case, the commission recognized situations might arise where it would become necessary for one of the utilities to engage in work within the other's service area. Thus, the commission established certain procedures to address this concern, including a waiver by the incumbent utility or commission approval.

The commission also noted that there may be times when the utilities might need to run transmission or intertie lines through the other's service area. The commission chose not to limit these activities, provided that "service is not extended to new customers within that certified service area" unless allowed under another provision. We upheld the service areas established by the commission, although we vacated those portions of the order dealing with the transferring of facilities between the two parties.[14]

■ After remand, Chugach, ML&P, and the commission resolved the issue regarding the transferring of the facilities. But the issue at hand is distinct from the previous litigation. Here, instead of arguing that it has a territorial right to proceed, Chugach raises a matter of statutory interpretation. It questions how AS 42.05.221(a) and (d) should be applied. ML&P contends that the commission's prior order precluded Chugach from retaining or acquiring customers within ML&P's area. But this is separate from the issue of whether a determination must be made under subsection (a) or under subsection (d) before allowing Chugach to procure customers. Chugach also distinguishes this claim in that the previous order was specific to distribution only, making no determination about providing the commodity of electricity itself outside of Chugach's service area. Finally, all of the commission's decisions are predicated on the public interest. But the public interest might have changed since the commission's previous orders. Because the issues previously resolved and the one now before the court are not identical, Chugach is not estopped from litigating the present case.

In short, although Chugach and ML&P have a long history of court battles and many previous orders have been entered regarding their allocated areas, the instant action is distinct from these cases and therefore not precluded by previous decisions.

## 2. The commission may use its "general powers" as a means to limit competition.

■ The commission has implied powers.[15] An organization like the commission "is an administrative agency that has whatever powers are expressly granted to it by the legislature or conferred upon it by implication as necessarily incident to the exercise of powers expressly granted."[16]

■ Chugach reads the commission's order to say the commission's power to limit

12. *Alaska Contracting & Consulting, Inc. v. State, Dep't of Labor*, 8 P.3d 340, 344–45 (Alaska 2000) (quoting *Renwick v. State, Bd. of Marine Pilots*, 971 P.2d 631, 634 (Alaska 1999)).

13. *Alaska Pub. Utils. Comm'n v. Chugach Elec. Ass'n*, 580 P.2d 687 (Alaska 1978), *rev'd on other grounds by City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979).

14. *Id.* at 696.

15. *Alaska Pub. Utils. Comm'n v. Municipality of Anchorage*, 902 P.2d 783, 788 (Alaska 1995) (citing *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867 (Alaska 1992)).

16. *Id.* (quoting *Glacier State Tel. Co. v. Alaska Pub. Utils. Comm'n*, 724 P.2d 1187, 1190 (Alaska 1986)).

competition is solely a result of some general inference. Chugach argues that because the commission lacked specific authority, the commission and the superior court were forced to infer that the commission had general powers to control competition within the framework of AS 42.05.221 instead of properly utilizing AS 42.05.221(d) for this purpose. This, however, is not what the commission held. Instead, it stated that its power to control competition derived from three places: AS 42.05.141,[17] AS 42.05.221(a), and AS 42.05.221(d). No one contests Chugach's proposition that the statutory scheme allows for some competition. Chugach simply fails to acknowledge that that competition results only from the commission's issuance of certificates and can be curtailed only by the commission under AS 42.05.221(d) after it makes the requisite findings. Moreover, Chugach's

reading of the statute contravenes the well-established interpretation of AS 42.05.221(a) to require public utilities to obtain approval from the commission prior to offering a competitive service in a particular market.[18]

### 3. The commission's and superior court's interpretation of AS 42.05.221(a) and (d) does not render subsection (d) meaningless.

■ In Alaska, a certificate of public convenience and necessity does not confer a grant of monopoly power.[19] Thus, Chugach claims that any previously certified utility is allowed to begin competing for consumers without additional advance notice or approval from the commission. The only check on this competition, according to Chugach, is AS 42.05.221(d), which allows competition to be

---

**17.** AS 42.05.141 provides in part:

(a) The Regulatory Commission of Alaska may do all things necessary or proper to carry out the purposes and exercise the powers expressly granted or reasonably implied in this chapter....

**18.** Chugach suggests that federal antitrust law provides an "overlay to state law" that bars the commission from exercising its general powers and precludes its longstanding interpretation of AS 42.05.221. But we disagree. In the Sherman Act, "Congress, exercising the full extent of its constitutional power, sought to establish a regime of competition as the fundamental principle governing commerce in this country." *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 398, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (internal citations omitted).

In *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Court found two standards for antitrust immunity stemming from the Court's earlier decision in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943): "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; [and] second, the policy must be actively supervised by the State itself." *Id.* at 105, 100 S.Ct. 937 (internal quotation marks and citations omitted). Alaska's policy of anticompetitive conduct for utilities that have a certificate of public convenience and necessity is not only permitted but compelled. AS 45.50.572(d) immunizes public utilities that have been issued a certificate of public convenience and necessity from state antitrust law. AS 42.05.221(a) requires certificates of public convenience before a utility can operate. AS 42.05.221(d) then allows the commission to take appropriate action to control competition if it

finds that competition not in the public interest. These statutes, read separately or together, evidence a stronger case for meeting the first prong of *Midcal* than was seen in *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 64, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). In that case, the Court upheld a practice allowing a rate bureau to submit a joint rate proposal for rates on behalf of its members to the applicable state agency in each state for consideration regardless of the fact none of these states had legislation compelling collective ratemaking, noting that, "[i]f more detail than a clear intent to displace competition were required of the legislature, States would find it difficult to implement through regulatory agencies their anticompetitive policies." *Id.* at 64, 105 S.Ct. 1721. The purpose of the agency is to deal with problems outside the realm of the legislature's knowledge. *Id.* Thus, to require "express authorization for every action that an agency might find necessary to effectuate state policy would diminish, if not destroy, its usefulness." *Id.* Chugach does not argue whether the State of Alaska's policy to regulate public utilities is actively supervised by the state in its brief, relying instead on its arguments regarding the first prong of the *Midcal* test. Despite the fact Chugach did not argue against it, it seems relatively clear that the issuance of certificates of public convenience as well as other policies relating to public utilities are actively supervised by the state. Unlike the situation in *Snake River Valley Elec. Ass'n v. PacifiCorp*, 238 F.3d 1189 (9th Cir.2001), where the utility with the distribution facilities had the power to withhold its consent from other utilities wishing to serve its customers, ML&P has no such power. Therefore, the second prong of *Midcal* is easily met.

**19.** *Chugach Elec. Ass'n, Inc. v. City of Anchorage*, 426 P.2d 1001, 1003 (Alaska 1967).

limited only after the commission determines that competition between two or more utilities is taking place and that such competition is not in the public interest. Chugach thus asks: If ML&P does not have a monopoly by virtue of its certificate, how can it deny its customers the ability to buy electricity from a competing seller? Chugach's argument is unpersuasive. As ML&P correctly notes, monopolies exist "not because [they are] inherent in the issuance of [a] certificate, but because the Commission has not authorized any other utility to provide competing services within the area...."

■■■■ The plain language of AS 42.05.221(a) requires an additional certificate prior to any utility providing an additional type of service.[20] Chugach presents no legislative history to contest this plain meaning, nor does it present any case law to support its interpretation.[21] Chugach argues that because AS 42.05.221(d) is the only subsection to mention competition, it is therefore the only part of the statute that regulates competition. But the commission has other statutes it may utilize to limit competition. Alaska Statute 42.05.221(a) is one of these. Under AS 42.05.241, "a certificate may not be issued unless the commission finds that the applicant is fit, willing, and able to provide the utility services applied for and that the services are required for the convenience and necessity of the public."[22] The commission can grant the certificate in whole or in part and may add conditions that it deems necessary to protect and promote the public

interest, including ordering the applicant to serve an area not applied for. The commission may also deny any applicant for good cause. Under AS 42.05.271, these certificates can be revoked or suspended by the commission on complaint or on its own motion after good cause is shown. A necessary consequence of these provisions regarding certificates is that a utility is usually prohibited from providing service outside of the area granted in the certificate until the utility applies for a new certificate. This is not in conflict with AS 42.05.221(d). Alaska Statute 42.05.221(a) allows the commission to prevent utilities from duplicating service until the commission finds it is in the public interest and AS 42.05.221(d) authorizes the commission to eliminate or limit any existing competition if it is found to be harmful to the public interest.

The proper application of AS 42.05.221(a) in no way conflicts with the application of AS 42.05.221(d). One situation involving the proper use of subsection (d) arose when municipally-owned utilities came within the purview of AS 42.05.221. These utilities were not previously required to obtain a certificate. When the municipally-owned utilities came under this statute, both Chugach and ML&P were operating within the same district. The commission then utilized AS 42.05.221(d) to separate the two operations and provide them with distinct territories.[23]

Alaska Statute 42.05.221(a) requires a separate certificate where a utility provides

---

**20.** "We apply a sliding scale approach in matters of statutory interpretation, and have rejected a mechanical application of the plain meaning rule." *Moody–Herrera v. State, Dep't of Natural Res.*, 967 P.2d 79, 84 (Alaska 1998). Thus, the plainer the language of the statute is, the more convincing the evidence contrary to that language must be. *Anchorage Sch. Dist. v. Hale*, 857 P.2d 1186, 1189 (Alaska 1993). "Basic principles of statutory construction 'militate against interpreting a statute in a manner that renders other provisions meaningless.' Contradictions should be harmonized." *Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.*, 991 P.2d 202, 208 (Alaska 1999) (quoting *M.R.S. v. State*, 897 P.2d 63, 66 (Alaska 1995)); *Homer Elec. Ass'n v. Towsley*, 841 P.2d 1042, 1045 (Alaska 1992) (stating "[a]s a general rule, a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative

or superfluous, void or insignificant." (internal quotation marks omitted)).

**21.** *See Homer Elec. Ass'n*, 841 P.2d at 1043–44 (noting the most reliable guide to a statute's meaning is the statute's words in conjunction with their common usage. Legislative history and context are still considered; however, they must "present a compelling case that the literal meaning of the language of the statute is not what the legislature intended.").

**22.** *See, e.g., Alaska Fed'n for Cmty. Self–Reliance v. Alaska Pub. Utils. Comm'n*, 879 P.2d 1015, 1020 (Alaska 1994).

**23.** *Alaska Pub. Utils. Comm'n v. Chugach Elec. Ass'n, Inc.*, 580 P.2d 687, 696 (Alaska 1978), *rev'd on other grounds by City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979).

**254**

more than one type of service. Chugach's interpretation of AS 42.05.221 would render subsection (a) meaningless. The commission would have no authority to require a utility to acquire a new or modified certificate before it began to provide services outside of its designated area as AS 42.05.221(a) does not distinguish between services, commodities, uses, or facilities.

Despite Chugach's claims, the commission's interpretation of AS 42.05.221(a) does not render subsection (d) of that provision meaningless. In addition, interpreting the statute as Chugach suggests would have precisely that effect.

### 4. Chugach incorrectly construes other statutes to show the State of Alaska's preference for competition.

Chugach argues that other relevant statutes show the State of Alaska's preference for competition over state regulation. Chugach relies on AS 42.05.311, which states that a public utility having any type of distribution or transmission facilities "shall, for a reasonable compensation, permit another public utility to use them when the public convenience and necessity require this use and the use will not result in substantial injury to the owner, or in substantial detriment to the service to the customers of the owners." According to Chugach, an electric utility cannot use the facilities of a second utility for any purpose other than competition, evidencing the preference for competitive over anticompetitive conduct.

Chugach fails to note the conditional language of the statute, which warrants shared use only when the "public convenience and necessity" require it. Joint use is not required by statute. Instead, if utilities fail to agree on whether joint use is appropriate, a party may apply to the commission for an order mandating it.[24] Thus, even if the legislature intended AS 42.05.311 to engender competition, the commission may do so only

after it finds that such competition is in fact appropriate.

### 5. There is no distinction between services and commodities under Alaska's public utilities law.

In the proceedings before the commission and the superior court, Chugach attempted to avoid the effect of AS 42.05.221(a) by arguing that the sale of electricity by itself was the sale of a commodity rather than the provision of a service.[25] Chugach argued that its certificate establishes a description of the authorized area for services only, not for commodities. Chugach thus contended that the service area description in its certificate applied only to services and not to the retail sale of the commodity of electricity itself. Both the commission and Judge Tan correctly rejected this argument based on the broad statutory definition of the word "service," which includes commodities.[26]

## V. CONCLUSION

The commission correctly held that AS 42.05.221(a) required Chugach to obtain an additional certificate of public convenience and necessity prior to engaging in contact with consumers regarding electricity sales outside its allotted area. This interpretation of the statute does not render AS 42.05.221(d) meaningless and is in accordance with other similar provisions. Accordingly, we AFFIRM the decision of the superior court that affirmed the commission's decision.

---

24. AS 42.05.321(a).

25. Chugach has now apparently abandoned the argument.

26. AS 42.05.990(6) provides: " 'service' means, unless the context indicates otherwise, every commodity, product, use, facility, convenience, or other form of service that is offered for and provided by a public utility for the convenience and necessity of the public."