FAR NORTH SANITATION, INC., an
Alaska Corporation, Appellant,

v.

ALASKA PUBLIC UTILITIES
COMMISSION, Appellee.

No. S–3796.

Supreme Court of Alaska.

Feb. 7, 1992.

Rehearing Denied March 31, 1992.

Kirsten Tinglum, John C. McCarron, Asburn & Mason, Anchorage for appellant.

Glenn M. Gustafson, Asst. Atty. Gen., Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I. FACTS AND PROCEEDINGS.

Far North Sanitation, Inc. (Far North) is a garbage collection company located in Fairbanks (City). It operates both inside and outside the city limits. Before 1980, the Alaska Public Utilities Commission (APUC) regulated Far North's rates only for garbage collection outside the City's limits. Similarly, the collection rates of Far North's competitor, Marche Sanitation (Marche), who operated only within the City's limits, were unregulated.

In 1980 the legislature extended APUC's jurisdiction to include garbage collectors inside municipalities. AS 42.05.711; *see* Ch. 136, § 12, SLA 1980 (repealing AS 42.-05.221(f)); Ch. 76 § 1 SLA 1973. Marche, however, was still exempt from regulation because its revenues were less than $200,-000 per year. AS 42.05.711(i). At that time, Far North and Marche were engaged in litigation over competition and rates in Fairbanks. After the APUC's jurisdiction was expanded, Far North, Marche, and the City submitted a stipulation and agreement to APUC, under which the City would oversee and control the refuse collection rates.

In February 1981, APUC adopted a modified version of the stipulation, and issued an order exempting from regulation Far North's rates for garbage collection within city limits. The order noted that Marche was already exempt from regulation, and that this order would "ensure that these two utilities—Far North and Marche—will be able to compete on equal footing." Additionally, the order stated,

this exemption, in effect a granting of permission to compete for the business of the commercial refuse customer, is in the nature of an experiment. This is particularly so in that if they are to work effectively, both the exemption and the Stipulation and Agreement require reliance on the good offices of the City of Fairbanks and the Fairbanks City Council to make them work: to monitor the rates, quality of service and management practices of these two utilities and to respond to customer complaints and to do the same with respect to its own refuse collection operations.

Pursuant to this order, the City set a maximum rate for the two utilities. While Far North and Marche remained in competition, neither charged the maximum rate. In 1983 Far North purchased Marche and later raised its rates. However, the new rates remained below the maximum rates set by the City.

On November 18, 1986, APUC issued an "interim order" revoking Far North's exemption from rate regulation. At all times, Far North's rates outside the City had been subject to regulation; however, at the time of the interim order, Far North was charging its outside customers an unauthorized above-tariff rate. The interim order noted this violation, and declared all of Far North's subsequent rates both inside and outside the City to be "interim" rates and subject to refund pending final rate determination:

Since competition in the provision of commercial refuse service no longer exists within the city limits of Fairbanks, the Commission will revoke FNS' exemption from regulation for that portion of its operation within the limits of the City of Fairbanks and require FNS to submit a revenue requirement filing based on a 1986 test year, in accordance with 3 AAC 48.275(a) and 3 AAC 48.270.

APUC held a hearing in March 1988 at which Far North presented evidence on the

issue of the appropriate rate for refuse collection inside the City.[1] At that hearing, Far North did not contest the legality of APUC's interim order.

In August 1988, APUC issued its final rate determination for Far North's operations inside the City (final order). The rate established by APUC was lower than what Far North had been charging, so APUC ordered Far North to refund the difference dating back to November 18, 1986. Far North filed a motion for reconsideration which was granted in part, but led to no change in the result.

 Far North appealed APUC's final order to the superior court, alleging that the interim order was unauthorized and illegal as retroactive ratemaking. APUC argued to the superior court that Far North had waived this issue by not raising it at the hearing or in its motion for reconsideration. The superior court chose not to decide the issue of waiver, because it was able to dispose of the case on its merits by ruling against Far North. Specifically, the superior court found that:

> AS 42.05.141(a) provides a broad grant of authority to the APUC to regulate public utilities and set their rates. In this case, the APUC, in determining that FNS was an utility to be regulated, provided for a "test year" for FNS. This is a common procedure used by the Commission when required to establish an initial rate for a previously unregulated entity. The APUC provides that these initial rates be interim, to protect the utility from having the APUC pick an arbitrary initial rate without the ability to determine its reasonableness and to make the rate refundable to protect the customer so that if the rate FNS had been charging was excessive, consumers would be protected. This test year interim rate-setting appears to be one which was within the liberal construction of AS 42.05.141 which grants the APUC, upon its own

motion, the right to investigate and set rates which are fair to consumers and provide a reasonable rate of return and profit to the utility.

Far North appeals, again arguing that the interim order was an exercise in unauthorized retroactive ratemaking.

## II. DISCUSSION

### A. Has Far North Waived its Right to Obtain Review of the 1986 Interim Order of the APUC? [2]

 As a preliminary matter, we must determine whether Far North has waived its right to appeal. APUC argues that its interim order was a final order, which Far North should have appealed within thirty days of November 18, 1986. Because no appeal was filed until August 1988, APUC believes the current appeal should be dismissed as untimely. Furthermore, APUC argues that Far North had an obligation to raise the issue of agency authority before the agency itself. Because this issue was not raised until the appeal before the superior court, APUC considers it waived. We review APUC's arguments on waiver *de novo*, as they were not addressed below.

 Appellate Rule 602(a)(2) provides that appeals from administrative agencies are to be taken "within 30 days from the date that the decision appealed from is mailed or otherwise distributed to appellant." However, the time for appeal commences running only if the agency's decision is a final, appealable order. *Ostman v. State, Commercial Fisheries Entry Comm'n*, 678 P.2d 1323, 1327 (Alaska 1984). The first question, therefore, is whether the APUC's 1986 interim order constituted a final, appealable order.

We employ a "practical" test to determine whether or not an order is a final order. *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 184 (Alaska 1980). We have stated, "[a]n order by the trial court as a

---

1. It is undisputed that Far North's rates within Fairbanks were always within the maximum limits established by the Fairbanks City Council.

2. We reject Far North's argument that APUC waived this argument by not filing a cross ap-

peal. We may affirm the superior court on any basis appearing in the record. *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990). Accordingly, APUC's waiver argument could be raised in its appellee brief.

general rule is said to be final if it completely and finally disposes of the contested claims on their merits." *Mukluk Freight Lines Inc. v. Nabors Alaska Drilling, Inc.,* 516 P.2d 408, 411 (Alaska 1973) (footnote omitted). *See also Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1030–31 (Alaska 1972) (*overruled on other grounds* by *City and Borough of Juneau v. Thibodeau,* 595 P.2d 626 (Alaska 1979)).

In *Mukluk,* the superior court's decision required the parties to continue discovery before a final decision on the merits would issue. However, the superior court simultaneously had determined that the agency action in question was authorized. Nevertheless, we held that the superior court's decision was not a final order, even though it "disposed of Mukluk's claim for an evidentiary hearing and approved the Commission's proposed use of the procedure." *Mukluk,* 516 P.2d at 411. We said, "[n]ecessarily another decision must follow resolving those issues initially raised by the Nabors' application. Since this is so, we must conclude that the order of the superior court was not a final order." *Id.*

Similarly, Far North appeals only the 1986 interim order, not the merits of the 1988 final decision. However, as of November 18, 1986, the APUC gave Far North time to submit a tariff advice letter and a revenue requirements study in support of its rates. Under the *Mukluk* test, we conclude that the 1986 interim order was not a final, appealable order. The final order was the August 1988 order from which Far North did file a timely appeal.[3] Thus we hold that the instant appeal was timely filed.

■ Next, APUC argues that Far North had an obligation to raise the issue of the agency's authority to issue interim refundable rate orders before the agency itself. In *Amerada Hess Pipeline Corp. v. Alas-*

*ka Pub. Util. Comm'n,* 711 P.2d 1170, 1181 n. 22 (Alaska 1986), we stated, "[a]s a general rule, we will not consider arguments never raised before the trial court. We agree with the APUC that this same rule should apply to arguments never presented to an agency whose decision is appealed." (citation omitted). *See also United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) ("orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts"); 4 K. Davis, *Administrative Law Treatise,* 441–44 (2d ed. 1983). However, we have acknowledged that questions of subject matter jurisdiction or plain error can be raised *de novo* before this court. *Burrell v. Burrell,* 696 P.2d 157, 162 (Alaska 1984) (subject matter jurisdiction); *Wettanen v. Cowper,* 749 P.2d 362, 364 (Alaska 1988) (plain error).

■ Jurisdictional defects deprive the agency of power to adjudicate or regulate the subject matter. *See, e.g., State, Dep't of Labor v. University of Alaska,* 664 P.2d 575 (Alaska 1983) (Department of Labor had no jurisdiction to hear claim which was not a wage claim because statute required that a wage claim be properly filed to bring claim within jurisdiction; exhaustion of administrative remedies not required when alleged infirmity is jurisdictional); *Leedom v. Kyne,* 358 U.S. 184, 188–89, 79 S.Ct. 180, 183–84, 3 L.Ed.2d 210 (1958) (NLRB had no jurisdiction to issue order which went beyond its statutory authority); *Van Sickle v. Industrial Comm'n,* 121 Ariz. 115, 588 P.2d 857, 859–60 (App.1978) (agency had no jurisdiction to consider claim where no formal claim had been filed; question of jurisdiction could be raised for first time on appeal). Here, as in *Kyne,* we are asked to "strike down an order of the [agency] made

---

3. APUC quotes from *Alaska Pub. Util. Comm'n v. Greater Anchorage Area Borough,* 534 P.2d 549, 557 n. 25 (Alaska 1975), to the effect that interim rates are "final acts." There we were referring to interim rates which were held confiscatory in *Prendergast v. New York Tel. Co.,* 262 U.S. 43, 49, 43 S.Ct. 466, 468, 67 L.Ed. 853

(1923). As those rates were not refundable, they were final for the period in which they were in force. Also, that case discussed interim rates in connection with a request for preliminary injunctive relief. These factors differentiate *Greater Anchorage Area Borough* from the case at bar.

in excess of its delegated powers." *Kyne,* 358 U.S. at 188, 79 S.Ct. at 183.

■■■ There are difficulties in determining whether an asserted error is jurisdictional.[4] If Far North's claim of unauthorized illegal rate making is not jurisdictional, then it has waived any errors it now asserts by virtue of its failure to raise any such claims of error before the administrative agency. Here Far North's primary claim is that the APUC lacked authority to enter the 1986 interim rate.[5]

### B. Was the 1986 Interim Order a Valid Order? [6]

Far North quotes from *McDaniel v. Cory,* 631 P.2d 82, 88 (Alaska 1981) to establish that administrative agencies are "creatures of statute and therefore must find within the statute the authority for the exercise of any power [they] claim." It emphasizes that Alaska statutes do not expressly authorize APUC to declare a rate interim, except when a utility has requested a rate increase. AS 42.05.421(c). Given that AS 42.05.421(c) establishes a specific and detailed procedure for declaring a rate interim, Far North concludes that the legislature did not intend to grant APUC broad powers to declare rates interim. Moreover, Far North argues that AS 42.05.431, which requires a hearing before APUC may establish rates, also does not expressly authorize suspending existing rates. By nega-

4. Professor Davis has analyzed court holdings that dealt with assertions that an administrative agency lacks jurisdiction. K. Davis, *supra,* § 26:4 at 425–31. He states that "Supreme Court cases throughout the twentieth century have gone both ways on the question." *Id.,* § 26:5 at 431. He has proposed that courts consider three factors when determining a question of agency jurisdiction: "extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." *Id.* at 432. Here, the first of Davis's factors does not apply because this is not a case of failure to exhaust administrative remedies. The second factor, clarity of lack of jurisdiction cuts both ways. It is clear that APUC has jurisdiction to set rates. Therefore, APUC has subject matter jurisdiction here. However, it is not clear that APUC was given statutory authorization to set interim rates. To that extent, we must analyze Far North's claim to determine whether it is jurisdictional. The third factor, extent of specialized agency understanding, is not applicable here as the validity of the interim rate in question is a matter of statutory interpretation.

5. A party cannot, by waiver, endow an administrative agency with powers beyond those which are authorized by legislative grant. Therefore, we must review Far North's claim to the extent that it requires an analysis of APUC's statutory authority. However, following *Tucker,* 344 U.S. at 37, 73 S.Ct. at 69, we caution that any procedural errors which Far North could have raised at hearing will be considered waived.

In *Tucker,* the administrative hearing concededly did not conform to the requirement of the federal Administrative Procedure Act. The United States Supreme Court held that this "was an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings. But it is not one which deprives the Commission of power or jurisdiction...." 344 U.S. at 38, 73 S.Ct. at 69. Similarly, other courts which have considered challenges to an agency's authority have not automatically concluded that the challenge was jurisdictional. *See e.g., Inter–Tribal Council of Nevada v. United States Dep't of Labor,* 701 F.2d 770, 771 (9th Cir.1983) (issue of Secretary of Labor's authority to recoup misspent funds "does not go to the jurisdiction of the agency" and "is not a case where the agency was without power to adjudicate" so it was waived when not raised before the agency); *Calixto v. Industrial Comm'n,* 126 Ariz. 400, 616 P.2d 75, 77 (App.1980) (alleged noncompliance with statute does not "constitute jurisdictional defects affecting the Commission's power to adjudicate"); *Campbell v. Key Millwork & Cabinet Co.,* 116 Idaho 609, 778 P.2d 731, 734 (1989) (claim that agency exceeded its statutory authority by reconsidering its decision will not be heard on appeal when not raised at agency hearing); *Hay v. Motor Vehicles Div.,* 77 Or.App. 398, 713 P.2d 641, 642 (1986) (claim that agency violated statutory procedures by failing to give adequate notice will not be heard on appeal when not raised before agency).

6. We exercise our independent judgment on this issue concerning the scope of an agency's authority since it involves statutory interpretation, or analysis of legal relationships, about which courts have specialized knowledge and expertise. *See Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971); *see also Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987). We give no deference to the superior court's decision when it acts as an intermediate court of appeals. Instead, we independently review the administrative agency's decision. *Thorne v. Department of Public Safety,* 774 P.2d 1326, 1329 (Alaska 1989); *Tesoro,* 746 P.2d at 903.

tive inference, Far North concludes that APUC's action was unauthorized.[7]

The APUC reaches the opposite conclusion. It argues that the question is "whether the Commission has the power to declare rates to be charged by a public utility, prospectively interim and refundable, during the time in which the Commission goes through the process of setting permanent just and reasonable rates." The APUC views the legislature's authorization of interim rates in AS 42.05.421(c) as proof that the legislature favors interim rates where necessary to ensure a fair process. Under the APUC's approach, the legislature's failure to explicitly address the circumstance where rates are too high is immaterial. The legislature granted APUC broad powers to accomplish its purposes, and further provided that those powers should be liberally interpreted. AS 42.-05.141(a)(1). Moreover, the APUC sees its ability to declare rates interim, particularly when a rate is too high, as indispensable to fair procedures. Finally, the APUC argues that the peculiar facts of the case at bar required its action. Here, the utility was essentially exempt from regulation "by way of an experiment." When the basis for this experiment ended, the broad powers of APUC to set "just and reasonable" rates mandated declaring existing rates interim. The APUC concludes that the "power to issue interim orders is necessarily implied from the express liberal ratemaking power granted to the Commission."

Our analysis begins by examining the relevant statutory provisions. APUC has the power to make or require just, fair and reasonable rates for public utilities. AS 42.05.141(a)(3). Under the statute, this power "shall be liberally construed to accomplish its stated purposes." AS 42.05.-141(a)(1). However, the statute also states, "[a] legally filed and effective tariff rate ... may not be changed except in the manner provided in this chapter." AS 42.05.-371.

Alaska Statute 42.05.431(a) establishes the power of the commission to fix rates. It provides that,

> [w]hen the commission, *after an investigation and hearing,* finds that a rate demanded, observed, charged or collected by a public utility for a service subject to the jurisdiction of the commission ... is unjust, unreasonable, unduly discriminatory or preferential, the commission shall determine a just and reasonable rate ... *to be observed or allowed* and shall establish it by order.

(emphasis added). This provision indicates that rates are generally prospective, and that an investigation and hearing must precede the imposition of a new rate. There are significant principles embodied in these requirements. "A fundamental rule of ratemaking is that rates are exclusively prospective in nature." *New England Tel. & Tel. Co. v. Public Util. Comm'n,* 116 R.I. 356, 358 A.2d 1, 20 (1976). From the point of the utility, the general rule against retroactive rate making is critical. "The wholesale purchasers of electricity cannot plan their activities unless they know the cost of what they are receiving...." *Electric Dist. No. 1 v. Federal Energy Regulatory Comm'n,* 774 F.2d 490, 493 (D.C.Cir. 1985). *See also Petition of Elizabethtown Water Co.,* 107 N.J. 440, 527 A.2d 354, 361 (1987) (investor confidence, utility credit rating, and integrity of service may be affected); *Michigan Bell Tel. Co. v. Michigan Pub. Serv. Comm'n,* 315 Mich. 533, 24 N.W.2d 200, 206 (1946).

 In brief, APUC may establish rates only after an investigation and hearing. AS 42.05.431(a). This provision provides notice to both the public and the utility, and helps ensure that the ensuing rates are fair and just. Here, APUC adopted the "interim rate" without first holding a hearing. Granted, the interim rate was the same as

---

**7.** We reject Far North's argument that their due process rights are implicated by a rate which is made prospectively refundable. *See Great*

*Northern RR v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 363, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932).

the previous rate. Nevertheless, the interim rate was subject to refund. As such, it represented a change of rate. Therefore, under AS 42.05.371, APUC erred by failing to hold a hearing before its 1986 adoption of the interim refundable rate.

 Review of the record persuades us that Far North, however, waived this error by failing to raise it before the APUC. *See Tucker*, 344 U.S. at 33, 73 S.Ct. at 67. Had Far North brought this error to APUC's attention, APUC could have taken steps to remedy the error. Here, the only party harmed by the failure to hold a hearing would be Far North. No member of the public has raised an objection to failure to hold a hearing before issuing the interim rate. Moreover, it was in Far North's interest to fail to raise this error before the agency. By delaying assertion of this error, Far North could possibly profit if this court determined that the error was jurisdictional. A holding that the APUC lacked jurisdiction to issue its 1986 interim order would necessitate vacation of the interim order, making the interim rates in question nonrefundable. This would reward Far North for its failure to assert error.[8] Thus, insofar as the error goes to APUC's failure to hold a hearing before ordering the 1986 interim refundable rate, we hold that the error is nonjurisdictional and on the record has been waived by Far North.

 Remaining for determination is the question whether APUC has authority to declare a rate interim and refundable after hearing. There is conflicting case law on this question. *Electrical Dist. No. 1*, 774 F.2d at 492–93, for example, held that the plain language of 16 U.S.C. § 824e(a), requiring the commission to fix rates which are to be observed thereafter, mandated that the commission may only establish final rates.

We think the better view is that the APUC has implied authority to set interim rates. *See Pueblo Del Sol Water Co. v. Arizona Corp. Comm'n*, 160 Ariz. 285, 772 P.2d 1138, 1140 (App.1988) (although no express authority exists, it is only "logical" that commission can impose interim rates subject to a decrease); *United Tel. Co. of Florida v. Mann*, 403 So.2d 962 (Fla.1981); *Grindstone Butte Mut. Canal Co. v. Idaho Power Co.*, 98 Idaho 860, 574 P.2d 902, 906 (1978) (implied in an on-going investigation is the power to set temporary rates); *see also Potomac Elec. Power Co. v. Public Serv. Comm'n of Dist. of Columbia*, 457 A.2d 776, 780 n. 1 (D.C.App.1983) (Commission's power to grant interim rate increases is "implied from Commission's specifically granted statutory powers"). Alaska's statute mandates that the powers of the APUC be liberally construed. AS 42.05.141(a)(1). Because the APUC must first conduct an investigation and hold a hearing pursuant to 42.05.431(a) before exercising its implied authority, the utility will have an opportunity to be heard, and will know the rate range and the amount at risk. This is consistent with the policy reasons behind prohibiting retroactive ratemaking.[9] Additionally, proper procedure will provide the utility with sufficient prospective notice to enable it to plan for the future.[10] This is

---

8. We do not intend to intimate that Far North was intentionally dilatory. Rather, we reiterate that our conclusion that Far North's failure to object or raise the point before the APUC constitutes waiver, because any other result would inevitably create an incentive for dilatory failure to assert error.

9. While APUC argues that Far North delayed the Commission's hearing for its own economic self-interest, we note that the APUC allowed Far North to use 1986 as a test year and granted Far North's motion to continue the hearing. As the Commission admits, "the Commission granted Far North every reasonable accommodation during the course of its proceedings." Moreover, we note 3 AAC 48.155(b) and (c) provides sufficient authority to the APUC to set a timetable in a rate case and hold the utility to it.

10. While we have concluded that the APUC has the implied authority to set interim rates in the circumstance where the utility has charged too high a price for its services, our disposition in the instant case turns upon a waiver analysis. Thus, because Far North has waived any assertions of procedural error, we do not address whether this specific instance of ordering an interim refundable rate comports with appropriate procedures.

consistent with the policy reasons behind prohibiting retroactive rate making.

In sum, we hold that the legislature intended to grant the APUC broad powers to establish "fair and just" rates. Implied within that broad grant of powers is the authority for the APUC to declare a rate interim and refundable, so long as the APUC provides protection for the interests of both the utility and the public. Given that the APUC has the substantive power to declare rates interim any error asserted by Far North in the instant case is non-jurisdictional. Accordingly, we hold that Far North waived any procedural objections it had to the establishment of the 1986 interim rate by not raising such objections before the APUC.

The decision of the superior court upholding APUC's 1986 interim refundable order is AFFIRMED.