**ALASKA PUBLIC UTILITIES COMMISSION and State of Alaska, Petitioners,**

v.

**MUNICIPALITY OF ANCHORAGE d/b/a Anchorage Telephone Utility, Respondent.**

No. S–6452.

Supreme Court of Alaska.

Sept. 8, 1995.

Virginia A. Rusch, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioners.

Heather H. Grahame and Ann M. Bruner, Bogle & Gates, Anchorage, for Respondent.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

*OPINION*

COMPTON, Justice.

## I. *INTRODUCTION*

Anchorage Telephone Utility (ATU) charged rates for services not approved by the Alaska Public Utilities Commission (APUC). APUC ordered a refund of approximately half of these revenues. On appeal the superior court, sitting as an intermediate court of appeals, reversed and remanded the case to APUC. In this petition for review, APUC argues that it has implied authority to order such a refund. ATU argues that no authority exists; alternatively, it argues that if such authority exists, a refund may only be ordered for that portion of the rates found unreasonable. We reverse.

## I. *FACTS AND PROCEEDINGS*

During an internal review, the Municipality of Anchorage, d/b/a Anchorage Telephone Utility, discovered that it was offering several services for which rates had not been set by APUC. Total revenue from these untariffed services was approximately $1.2 million. ATU notified APUC, which commenced an investigation. APUC ordered a report prepared by its staff.

ATU argued that all but one of the untariffed rates were reasonable. It offered to refund the unreasonable portion of the revenues from that one service, which amounted to approximately $68,000, as well as another $30,000 in services, in an effort to resolve the matter.

APUC issued an order rejecting ATU's argument that only the unreasonable portion of the rates should be refunded. It based this on two policy concerns. First, it found that "where ATU had 25 separate untariffed services which were implemented and revised at various points in time, it would be a practical impossibility to go back and determine what rate would have been approved as reasonable if ATU had followed the law and filed the tariff for approval." Second, it noted the necessity of providing an incentive for utilities to comply with the law.

In considering the amount to be refunded, APUC noted several mitigating factors:

> ATU brought the tariff discrepancies to the Commission on its own initiative; the discrepancies appear to be the result of procedural errors that are unlikely to recur in the future due to the institution of improved procedures; most of the rates were at reasonable levels; the revenue and costs for the services were included in the determination of ATU's overall revenue requirement; and ATU's customers received service for the rates charged.

APUC ordered approximately a fifty percent refund, finding that this balanced the need for deterrence with the mitigating factors. A refund of $553,831 was ordered; the total amount subject to possible refund was found to be approximately $1 million.

ATU appealed to the superior court. Appellate Rule 602(a)(2). The superior court

ruled for ATU, concluding that APUC had no authority to order a refund of revenues collected from untariffed rates. This court granted APUC's petition for review. Appellate Rule 402.

## II. DISCUSSION

### A. Standard of Review

■ The question of whether APUC has authority to order a refund is a question of law not involving agency expertise; thus, this court applies the "substitution of judgment" standard of review. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). If the agency has the power to order a refund, the decision is discretionary and thus is reviewed under the reasonable basis standard. *Lake & Peninsula Borough v. Local Boundary Comm'n*, 885 P.2d 1059, 1062 (Alaska 1994). Because the superior court acted as an intermediate appellate court, no deference is given to its decision. *Tesoro*, 746 P.2d at 903.

### B. APUC Has Implied Authority to Order a Refund

■ APUC argues that finding implied power to refund serves the purpose of the Alaska Public Utilities Act and that power to order a refund is necessarily incident to its express powers. ATU responds that since the legislature did not expressly grant refund

power, and instead provided a comprehensive statutory scheme, no refund power should be implied.

This specific point has not been addressed previously by this court. Although the Alaska Statutes contain several sections discussing rates and public utilities, none addresses the specific point at issue in this case. AS 42.05.371,[1] .381(a),[2] .391(c),[3] .411(a),[4] .431(a).[5] Consideration of policy reasons and a review of case law from other jurisdictions persuades us that APUC does have implied power to order a refund.

Foreign cases both find and reject implied refund authority. However, those finding implied power are based on situations similar to this one; those denying implied power arise from distinguishable situations. The case most analogous to the instant case is *GTE North, Inc. v. Public Service Commission*, 176 Wis.2d 559, 500 N.W.2d 284 (1993), where the state public service commission ordered a refund of compensation collected in violation of the filed tariffs. The court addressed section 196.37(2) of the Wisconsin statutes.[6] GTE argued that the "in the future" phrase limited the commission to prospective remedies. *Id.* 500 N.W.2d at 287. The court examined the former version of the section. It contained a clause following "in the future," which stated that "and shall make such other order respecting such mea-

---

1. The terms and conditions under which a public utility offers its services and facilities to the public shall be governed strictly by the provisions of its currently effective tariffs.
   AS 42.05.371.

2. All rates demanded or received by a public utility ... for a service furnished or to be furnished shall be just and reasonable....
   AS 42.05.381(a).

3. A public utility may not directly or indirectly refund, rebate or remit in any manner, or by any device, any portion of the rates and charges or charge, demand or receive a greater or lesser compensation for its services than is specified in its effective tariff.
   AS 42.05.391(c).

4. A public utility may not establish or place in effect any new or revised rates, charges, rules, regulations, conditions of service or practices except after 45 days notice to the commission and 30 days notice to the public.
   AS 42.05.411(a).

5. When the commission, after an investigation and hearing, finds that a rate demanded, observed, charged or collected by a public utility for a service subject to the jurisdiction of the commission ... is unjust, unreasonable, unduly discriminatory or preferential, the commission shall determine a just and reasonable rate, classification, rule, regulation, practice, or contract to be observed or allowed and shall establish it by order.
   AS 42.05.431(a).

6. Wisconsin Statute § 196.37(2) states:

   If the commission finds that any measurement, regulation, practice, act or service is unjust, unreasonable, insufficient, preferential, unjustly discriminatory or otherwise unreasonable or unlawful, ... the commission shall determine and make any just and reasonable order relating to a measurement, regulation, practice, act or service to be furnished, imposed, observed and followed in the future.
   *GTE North*, 176 Wis.2d 559, 500 N.W.2d at 286–87 (quoting Wis.Stat. § 196.37(2)).

surement, regulation, act, practice or service as shall be just and reasonable." *Id.* 500 N.W.2d at 287. The court noted that the legislation removing this clause contained language indicating that no substantive change was intended. Therefore, the court held that the "future" clause was not a restriction on the commission's powers, and a refund order was "a just and reasonable order regarding a 'measurement, regulation, act, practice, or service.'" *Id.* 500 N.W.2d at 288.

The court went on to analyze the case on policy grounds and reached the same conclusion. It first noted that it "must presume a legislative intent that advances the purposes of the statute." *Id.* It stated that if the commission has the power to order a refund, consumers can use "speedy and informal" commission proceedings to obtain monies to which they would be entitled. If such authority were lacking, the burdensome court system would have to be used, something often not worth the benefit to an individual consumer. The court finally noted that the commission was likely to enforce its decisions across the board, something the courts do not have the power to do. *Id.*

The Oregon Court of Appeals also has held that implied authority does exist. In *Pacific Northwest Bell Telephone Co. v. Katz*, 116 Or.App. 302, 841 P.2d 652 (1992), the court upheld a commission order requiring a utility to refund a portion of collected rates in a situation where no express power existed. The court held:

> To hold that PUC does not have the power to order a refund of amounts over collected under temporary rates that failed to comply with an ordered revenue reduction would be inconsistent with its regulatory role and statutory duties. Such a holding would deprive PUC of much of its power to protect customers from abusive delay tactics or, as in this case, unexpectedly long delays in implementing an ordered revenue reduction.

*Id.* 841 P.2d at 656–57. Specifically, the funds at issue were collected while the com-

mission was considering how to reduce rates and were above the allowed rate of return. The court characterized the collected funds as "excess revenues collected under an interim rate schedule that was not in compliance with the authorized revenue level." *Id.* 841 P.2d at 657. But the court also noted that "PUC allowed PNB to ... operate temporarily under an interim rate schedule that was ... higher than the authorized revenue level." *Id.* 841 P.2d at 654.

Although other jurisdictions have found that their local commissions did not have implied authority to order refunds, these cases are distinguishable. In *Niagara Mohawk Power Corp. v. Public Service Commission*, 54 A.D.2d 255, 388 N.Y.S.2d 157 (1976) (*Niagara A*), the New York court struck as retroactive ratemaking a refund ordered by a public service commission. At issue were tax refunds made by the government to the utility. The state commission ordered the refunds to be passed along to the consumers. The court reversed. It first held that such refunds were retroactive ratemaking. It then held:

> [W]e may not approve [the refund] unless it is authorized by existing law. It is well settled that the Commission may exercise only such powers as are conferred upon it by the Legislature, or which are incidental to such power, or necessarily implied therefrom. We find no statutory power, either express or implied, permitting a refund under these circumstances.

*Id.* 388 N.Y.S.2d at 158–59 (citations omitted). The court noted that the state legislature allowed refunds in two specific instances, neither of which fit the circumstances of the case. *Id.* 388 N.Y.S.2d at 159. The court decided that it was "reasonable and logical" to conclude that no general refund power was authorized. *Id.* The court stated, "Ratemaking is a prospective and not a retrospective process." *Id.* It finally noted that the proper approach was for the commission to consider the refunded taxes when the utility next requested a rate adjustment. *Id.*[7]

---

7. Statutory authority was later granted to the PSC to require utilities to pass along tax refunds.

N.Y.Pub.Serv.Law § 113(2) (1977).

In *Long Island Lighting Co. v. Public Service Commission*, 80 A.D.2d 977, 438 N.Y.S.2d 606 (1981), the commission ordered refunds to a group of consumers who had been classified in the wrong rate group. The court held that the commission was without authority to order such a retroactive refund. It noted that the applicable statute provided for power in the commission to adjust discriminatory rates "thereafter to be in force." *Id.* 438 N.Y.S.2d at 608. The court also noted "the absence of any express or implied statutory power permitting a refund under the present circumstances." *Id.*

These New York cases are not analogous to our own. *Niagara A* did not address illegally charged rates. Rather the question was the treatment of a tax refund. In *Long Island Lighting*, the rates were already in effect; the wrong rate was charged. Furthermore, the rate change was based on a commission interpretation of a statute made after the rates were charged and collected. 438 N.Y.S.2d at 607.

The highest appellate court of New York has limited the holdings in these cases by allowing a refund in a different situation. *Niagara Mohawk Power Corp. v. Public Serv. Comm'n*, 69 N.Y.2d 365, 514 N.Y.S.2d 694, 507 N.E.2d 287 (1987) (*Niagara B*). There the commission ordered a refund for imprudently incurred fuel costs passed along to ratepayers through an automatic rate adjustment clause.[8] The court upheld the refund, noting the validity and importance of the automatic rate adjustment clauses. The parties did not dispute the lack of direct statutory authority, *id.* 514 N.Y.S.2d at 696, 507 N.E.2d at 291, although the legislature amended the law to grant the commission that power shortly after the case arose. *Id.* 514 N.Y.S.2d at 698 n.*, 507 N.E.2d at 289 n.*. Noting several other statutorily-allowed refunds, the court stated that, "Nothing in these provisions suggests that the Legisla-

ture meant to prohibit the Commission from ordering the refund of automatically recovered fuel expenses when such expenses had not been subjected to a Commission review for reasonableness in a regular rate proceeding." *Id.* 514 N.Y.S.2d at 700, 507 N.E.2d at 293.

The Minnesota Supreme Court held that Minnesota's public utility commission did not have implied authority to order a public utility to refund charges collected under rates that the commission had previously declared discriminatory. *Peoples Natural Gas Co. v. Minnesota Pub. Utilities Comm'n*, 369 N.W.2d 530 (Minn.1985) (*PNG*). That case involved the rates for provision of natural gas to a few large consumers. *Id.* at 531–32. The court first decided that the refund was not retroactive ratemaking, but rather restitution of rates charged in violation of a rate-setting order. *Id.* at 533. Thus, it analyzed the question in terms of whether the commission had implied authority to enforce its order by a refund. *Id.* at 534–35. The court held that it did not, as utility regulation was "an intricate, ongoing process," where a reallocation "may set in motion an ever-widening set of consequences and adjustments." *Id.* at 535. It therefore held that granting such enforcement power would introduce such an important new factor into the equation that such power could not be implied. *Id.* at 535.

This case is only partially on point. *PNG* involved a small group of affected parties. The court indicated that it saw the issue not as retroactive ratemaking, but rather direct enforcement, where other adequate tools were available, such as penalties and legal action by the attorney general. *Id.* at 535. In addition to these differences, we are not persuaded by the analysis of the Minnesota court.

■ By statute, the powers of APUC are to be liberally construed.[9] Furthermore,

---

8. Such a provision automatically varies the rate charged based on changes in operating costs, such as fuel.

9. Alaska Statute 42.05.141(a) provides:
(a) The Alaska Public Utilities Commission may
(1) regulate every public utility engaged or proposing to engage in such a business inside

the state, except to the extent exempted by AS 42.05.711, and *the powers of the commission shall be liberally construed* to accomplish its stated purposes....
(Emphasis added).

[a] public service commission is an administrative agency that has whatever powers are expressly granted to it by the legislature or conferred upon it by implication as necessarily incident to the exercise of powers expressly granted.

*Glacier State Tel. Co. v. Alaska Public Utilities Comm'n,* 724 P.2d 1187, 1190 (Alaska 1986) (citations omitted).

We held previously that APUC may have implied powers. *Far North Sanitation, Inc. v. Alaska Pub. Utilities Comm'n,* 825 P.2d 867 (Alaska 1992). In *Far North,* APUC issued an order declaring a rate "interim" and subject to refund. The utility argued that APUC had no power to declare a rate interim and thus subject to refund, except when the utility had requested a rate increase.[10] *Id.* at 871. APUC did not dispute the lack of direct authorization. We held that "APUC has implied authority to set interim rates," but noted that APUC must first conduct an investigation and hold a hearing before exercising its implied authority. *Id.* at 873.

ATU argues that since the legislature expressly provided refund authority in one situation,[11] APUC has no other refund authority. ATU also argues that the existence of the penalty provision[12] and legislative history discussing its use as a compliance tool indicate that no refund authority should be implied.

The civil penalties are without doubt an enforcement tool. The question not addressed by ATU is whether the existence of one enforcement tool precludes implying oth-ers, especially where the tools are designed to combat problems with different effects. For instance, a penalty does not make whole consumers who were charged excessive rates. The utility may disgorge excessive profits with the proper penalty, but the penalty is not given to the consumers who initially paid the excessive rates.[13]

A holding that implied powers do not exist would undercut APUC's authority. This would allow a utility to charge any sort of rate for an untariffed service and refund nothing if caught. No incentive would be provided to comply with the filing requirements. As for post-event rate determination, if a "reasonable rate" can be forecast for the future, it should be easier to calculate the proper past rate since all data is available and speculation is minimized.

In *Far North Sanitation, Inc. v. Alaska Public Utilities Comm'n,* 825 P.2d 867 (Alaska 1992), we noted several reasons for the general rule against retroactive ratemaking. These included utility planning, investor confidence, utility credit rating, and the integrity of service. *Id.* at 872. None of these concerns would be impacted by a refund order in the instant situation.

The court in *GTE North,* 500 N.W.2d at 288, noted that refund powers allow consumers "speedy and informal" commission proceedings to obtain monies they would be entitled to, versus resort to court proceedings. Enforcement by the commission is also likely to be across the board, which would require a class action in court. Penalty pro-

---

**10.** The utility cited *McDaniel v. Cory,* 631 P.2d 82, 88 (Alaska 1981), for the language that agencies are "creatures of statute and therefore must find within the statute the authority for the exercise of any power [they] claim." *Far North Sanitation,* 825 P.2d at 871.

**11.** Presumably ATU refers to AS 42.05.421(c), which provides for refunds of rates collected under interim rate increases in effect while the Commission studies the increase. That portion of the rates later found to be unreasonable or unlawful is subject to a refund order.

**12.** AS 42.05.571—.621 allow APUC to assess civil penalties for most violations of statutes or regulations.

**13.** APUC argues that the legal maxim of *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of others) does not apply to this case. ATU mentions the issue briefly.

APUC is correct. In *Sonneman v. Hickel,* 836 P.2d 936, 939 (Alaska 1992), this court noted, "While this maxim is often a useful and logical guide to the meaning of an enactment, it does not always apply." We noted *Chevron U.S.A., Inc. v. LeResche,* 663 P.2d 923, 930–31 (Alaska 1983), where application of the principle was declined as the court found that the resulting limitation would be contrary to the purpose of the statute. *Sonneman* also declined application on the same grounds. We hold that application of the maxim would also be contrary to the regulatory system here.

visions do not protect consumers from overcharges. We find these policy concerns persuasive and hold that power to order a refund in the instant case may be fairly implied from article 5 of chapter 42 of the Alaska Statutes. AS 42.05.361–.441.[14]

### C. *APUC May Not Order a Refund of the Reasonable Portion of the Untariffed Rates*

■ ATU argues that a refund may not be ordered in this case, even if APUC has the power to do so, because the untariffed rates in question were reasonable. It begins by noting the purpose of APUC is to establish "just, fair, and reasonable" rates. *See* AS 42.05.141(a)(3). ATU argues that APUC found the rates reasonable; APUC disputes this fact, noting that ATU relies on a staff report which stated that the rates were probably reasonable, but that the issue was irrelevant.[15] ATU argues that since the rates were reasonable the ratepayers were not harmed, and any sanction should take the form of a civil penalty under AS 42.05.571.[16]

APUC counters that the civil penalties are not intended to be exclusive, noting the language at the beginning of the penalty statute: "In addition to all other penalties and remedies provided by law. . . ." AS 42.05.571(a). APUC also notes that the penalty provisions are primarily for enforcement of commission orders, where a refund applies to a very different situation. Finally, it argues that untariffed rates are unreasonable as a matter of law.

ATU cites *Alaska Public Utilities Commission v. Greater Anchorage Area Borough,*

534 P.2d 549, 558 n. 26 (Alaska 1975), for the proposition that "[r]ates which do not afford a reasonable return on the value of property used in the public service have been held to be confiscatory." ATU argues that past decisions of APUC only required a refund of the unreasonable portion of the rate charged by the utility at issue.

Untariffed rates are unquestionably illegal. *See* AS 42.05.371 & .411(a). Neither party provides any helpful discussion of whether APUC is limited to setting a reasonable rate after a utility violation such as this.

On policy grounds, a commission does not have authority to order refunds beyond what is necessary to reduce rates to reasonable levels. Statutory authority may not be implied beyond this point, as APUC's authority is limited to setting "just and reasonable" rates. If APUC wishes to penalize ATU beyond ordering the refund of unreasonable charges, AS 42.05.571 provides for civil sanctions. With such penalty authority clearly given by the legislature, APUC should not be allowed to order excessive refunds; this would result in windfalls to consumers. While APUC argues that it cannot determine what a just and reasonable rate would have been, this argument is not persuasive. If reasonable rates can be forecast into the future, they can be determined much more easily based on past data.

### IV. *CONCLUSION*

APUC does have implied power to order a refund of the unreasonable portion of the untariffed rates. Therefore, the judgment of

---

**14.** Support for our holding is also found in AS 42.05.421(c), *supra* note 11. Since APUC may order a refund in an interim rate setting, it may also do so when the utility has improperly avoided the interim rate route.

**15.** Although APUC in its order did state that "most of the rates were at reasonable levels," APUC prevails on this point for three reasons. First, this statement does not clarify which of the rates it might have thought reasonable and which not. Second, this is a general statement used as a mitigating factor, not a specific finding of reasonableness. Third, the procedures for determining reasonable rates had not been followed, as that was not the nature of the case. *See* AS 42.05.411, .421.

**16.** In addition to all other penalties and remedies provided by law, a public utility and every person, and their lessees or receivers appointed by a court in any way subject to the provisions of this chapter, together with their officers, managers, agents or employees that either violate or procure, aid or abet the violation of any provision of this chapter, or of any order, regulation or written requirement of the commission are subject to a maximum penalty of $100 for each violation. Each act of omission as well as each act of commission shall be considered a violation subject to the penalty. AS 42.05.571(a).

the superior court is REVERSED and the case is remanded to APUC for its determination of reasonableness and such other proceedings as may be consistent with this opinion.